# COURT OF APPEALS.

JAMES MCALPIN, administrator, &c., agt. REBECCA B.
POWELL.

*Negligence — in action for personal injury occasioned by negligence or want
of care of another, what must be made to appear.*

To maintain an action for personal injury occasioned by the negligence or
want of care of another, it must be made to appear that the defendant
owed some duty or obligation to the party injured which he failed to
discharge or perform. Unless there is some contract, duty or services
which a party is bound to fulfill, there can be no negligence, fault or
breach of the obligation.

The deceased was a bright, intelligent boy, nearly ten years of age, liv-
ing with his father, who, with his family, occupied the upper story
of defendant's tenement-house, and used the room, the window of which
opened on the fire-escape, for working at his trade as a shoemaker. The
boy, immediately previous to the accident, sat on the window-sill, the
window being open, and being about fifteen inches from the floor, and
about the same distance from platform of fire-escape. The deceased
stepped on the platform of the fire-escape (the dimension of which
was about eight by three and a half feet, and which had an iron railing
around its outside), and passed to the end, where there was a trap-door
and a ladder leading to the platform in the next story below. The
hinges of the trap-door, which were rusted and only fastened with a
small wire and a string, gave way, and he was precipitated below and
killed:

*Held*, that the deceased had no right to go upon the platform, and was
there for no legitimate purpose. It was not intended for any such use,
and the act of the deceased in entering upon and passing along the plat-
form was in violation of the purpose for which it was designed:

*Held*, further, that under such a state of facts, and where a person thus
voluntarily exposes himself to danger and is injured, there is no rule of
law which authorizes a recovery.

The distinction between cases where an infant is injured while lawfully
in the highway, which it has the right to travel and use, and where he

is palpably invading the premises of another, and is a mere trespasser at the time of the injury, pointed out and commented upon.

The owner of a building rented to a tenant without a covenant that the landlord should keep the same in repair, is not responsible for damages occasioned by neglect to repair.

Whether there was negligence of the tenant in not protecting the window with temporary grate or bars which exempted the defendant from liability, *quære.*

*January*, 1878.

APPEAL by defendant from a judgment for $1,186, entered March 22, 1876, upon the verdict of a jury, and from an order denying a motion for a new trial.

The defendant was the owner of No. 97 Myrtle avenue, in the city of Brooklyn. On June 1, 1875, the plaintiff became her tenant of rooms on the third floor of the building. The deceased was the plaintiff's son. The third floor, in the rear, consisted of two rooms, one a small hall room, the window of which opened upon a fire-escape.

The fire-escape was about six feet long, by three feet six inches wide, protected by a railing about three feet four inches high. At one end was a trap-door which gave access to the ladder below. This trap was so arranged as to turn upwards on hinges, so that to open it, it was necessary that the person should stand some distance back on the solid part of the floor. The floor was made of open slats.

The deceased was in his tenth year. The father was a shoe-maker, and he used the room which opened on the fire-escape for his bench, sitting there with a workman by the name of Donovan.

On the afternoon of August tenth the deceased was sitting on the window-sill with his feet resting on the floor or platform of the fire-escape. The window-sill was about fifteen or sixteen inches from the floor of the room, and the platform of the fire-escape fifteen or sixteen inches below the window sill. Donovan was engaged at his work. He heard a scream, looked out of the window and found that the boy had fallen

McAlpin agt. Powell.

through the door in the platform. To reach it he must have stepped upon the platform and then walked to the end in which the door was and stood upon the door. The boy fell to the ground and was killed.

It appeared that the hinges of the fire-escape were out of order, and that they were tied up by string and a piece of wire in a way which could be readily seen by anybody looking through the window. The plaintiff, as he sat at his work, looked right upon the fire-escape. He used the sill of the window to dry his shoes when in ink. This happened three or four times a week. He testified that it had never occurred to him to look at the trap-door; that if he had done so, he would have noticed its insecure condition.

The defendant and those who acted for her were not aware of the insecure condition of the fire-escape. When the plaintiff became tenant he did not call attention to it.

The case went to the jury upon the proposition of law, questioned by the defendant, both by exception to a refusal to nonsuit and by exceptions to the charge that the defendant was required to keep the fire-escape in repair and was responsible for neglect to do so.

The jury found $1,000 for the plaintiff, and the defendant appeals.

*John E. Parsons*, for defendant, appellant. The premises were hired in the condition in which they were, and in the absence of any agreement to repair on the part of the landlord, the law assumes that the rent was fixed with reference to the condition of the premises, and required the lessee, if he wished repairs made, to make them at his own expense (*Doupe* agt. *Genin*, 45 *N. Y.*, 119; *Witty* agt. *Mathers*, 52 *id.*, 512; *Suydam* agt. *Jackson*, 54 *id.*, 450; *Post* agt. *Vetter*, 2 *E. D. Smith*, 248; *Jaffe* agt. *Harteau*, 56 *N. Y.*, 398; *Corey* agt. *Mann*, 14 *How. Pr.*, 163; *Gott* agt. *Gandy*, 2 *Ellis & B.*, 847). The act (*Laws of* 1873, *p.* 134) providing for the construction of fire-escapes was merely a police regulation creating an obli-

gation only upon a landlord to the public authorities. For a failure to comply with the statute landlords are responsible to the penalties therein prescribed, but the statute does not operate to vary a contract which has been made between lessor and lessee. In this case the hiring or lease of the plaintiff in effect provided that the defendant should not be compelled to repair the premises. For the benefit of such an agreement the defendant paid a valuable consideration in the diminished amount at which the law presumes the rent to have been fixed. It cannot be maintained that notwithstanding the statute, it was not in the power of the parties to agree that as between them the defendant should not be called upon to make repairs. This was the agreement that was made, and to attach any such liability as was charged by judge NEILSON is to create for the parties a contract different to that into which, for sufficient consideration, they have entered (*The Mayor of the City of New York* agt. *Corlies*, 2 *Sandf.*, 301; *Howard* agt. *Doolittle*, 3 *Duer*, 464; *Sherwood* agt. *Seaman*, 2 *Bos.*, 127). The premises were private premises. The cases, therefore, which charge an owner for liability with reference to the condition of a street (*Congreve* agt. *Smith*, 18 *N. Y.*, 79; *Davenport* agt. *Ruckman*, 27 *id.*, 568; *Dygert* agt. *Schenck*, 23 *Wend.*, 446; *Anderson* agt. *Dickie*, 1 *Robt.*, 238) or of a pier (*Swords* agt. *Edgar*, 59 *N. Y.*, 27; *Cannavan* agt. *Conklin*, 1 *Daly*, 509) do not apply. When an owner derives benefit from a public use, the law very properly imposes upon him the necessity to keep the premises in suitable condition for public use. Here the premises in question were just as absolutely the property of the plaintiff during his hiring as if he were the owner. The defendant did not even have the right to enter the premises for the purpose of making repairs or for the purpose of ascertaining whether there was a necessity to make them. The responsibility for the premises as between the defendant and the plaintiff devolved upon the latter (*O'Brien* agt. *Caswell*, 59 *N. Y.*, 497; *Kastor* agt. *Newhouse*, 4 *E. D. Smith*, 20; *Howard* agt. *Doolittle*, 3 *Duer*, 464)

McAlpin agt. Powell.

The judge erred in his charge to the effect that the deceased was only bound to exercise the care which was proper to his age. The public streets are for the use of all ages, children as well as adults, and the law requires, therefore, that they shall be kept in a condition suitable for all ages. · Where, from any defect, a child is injured, the law properly holds the child only to the exercise of such care as corresponds with his age (*Davenport* agt. *Ruckman,* 37 *N. Y.,* 658; *Sheridan* agt. *Brooklyn and Newtown Railroad,* 36 *id.,* 39; *O'Mara* agt. *Hudson River Railroad,* 38 *id.,* 445; *Morgan* agt. *Brooklyn Railroad,* 38 *id.,* 455; *Thurbur* agt. *Harlem B. M. and F. R. R. Co.,* 60 *id.,* 326). But no such rule applies in the case of an apparatus like the fire-escape, not arranged for general use. Furthermore, a fire-escape is only designed for use in case of fire. It is a dangerous construction from its very nature, unsuitable to be used by a child; impracticable to be used by a child on the only occasion (in case of fire), when it is designed to be used at all. It was not intended as a place for children to play; and being used for that purpose at the time in question, any responsibility properly devolved upon the deceased, and upon the plaintiff (*Calligan* agt. *The N. Y. C. and H. R. R. R. Co.,* 56 *N. Y.,* 651; *Carroll* agt. *Staten Island R. R. Co.,* 58 *id.,* 126).

*Morris & Pearsall,* for plaintiff, respondent. The tenants in the house had a right to suppose that the balcony was strong and secure in all its parts, because the use to which it would surely be put, in case of fire, would subject it to great pressure. It was the legal duty of the defendant to keep the balcony in a safe condition, so that persons going on any part of it would be free from danger. "A legal duty is that which the law requires to be done or forborne." The performance of this legal duty on the part of the defendant, to keep the fire-escape in "good repair," is not excused by reason of her ignorance that it was out of repair. If that was the case, the greater the "neglect or default" of the defendant the

greater would be her immunity. This balcony was in a dangerous condition at the time the premises were rented to the plaintiff. The balcony being so situated that persons would naturally go upon it, it was the duty of the defendant or her agent (irrespective of the duty the law imposed upon her) to have notified the tenant of its dangerous condition. This duty was wholly neglected. The only question entitled to a moment's consideration is, whether the plaintiff's intestate was guilty of contributory negligence in going upon the balcony. This question was submitted to the jury by the court under a very clear charge, more favorable to the defendant than she had a right to claim; and the finding of the jury upon that question is conclusive. "The natural instinct of self-preservation ordinarily will lead to the employment of the precaution which the situation suggests to an individual in danger of harm" (*Weber* agt. *N. Y. R. R. Co.*, 5 *N. Y.*, 451). "The known disposition of men to avoid danger is to be considered in determining the question of contributory negligence" (*Johnson* agt. *Hudson R. R. R. Co.*, 20 *N. Y.*, 65). "Love of life and the instincts of self-preservation being of the highest motive for care, they will stand for proof of it till the contrary appears" (*C. and P. R. R. Co.* agt. *Brown*, 66 *Penn. St.*, 396). The question of contributory negligence was properly submitted to the jury, and their verdict cannot be disturbed (*Ireland* agt. *Oswego Railroad Co.*, 13 *N. Y.*, 533; *Bernhardt* agt. *R. S. R. R. Co.* 23 *How.*, 178; *Mullaney* agt. *Spence*, 15 *Abb.*, 330).

MILLER, *J.* — The owner of the premises where the accident happened which caused the death of the intestate was under a legal obligation to provide a fire-escape for the benefit of the occupants, and to keep the same in good repair (*S. L. of* 1873, *chap.* 863, *sec.* 36, *p.* 1354). While a failure to comply with the statutes rendered the owner liable for the penalty prescribed, in the absence of any express agreement to that effect, certainly it is by no means clear that this statutory duty could

be imposed upon the tenant. It is true that ordinarily, unless there is an agreement to repair on the part of the landlord, premises are hired in the condition in which they are at the time of the demise, and the rent is supposed to be arranged with reference to such condition. In such cases the landlord is under no obligations to repair, and the lessee, if he wishes any repairs, must make them at his own expense (*Witty* agt. *Matthews*, 52 *N. Y.*, 512). The reparation of a fire-escape would scarcely seem to come within the range of ordinary repairs of a building. It is an attachment to a certain class of tenant-houses which are enumerated in the statute, which is erected especially for the protection of the occupants, and a duty is imposed upon the landlord and owner having in view that object. Even if such a duty might be imposed by another under an express agreement, it is not apparent that it could be considered as constituting a part of the obligations of a tenant who hired without any special agreement as to repairs. It would be extremely difficult to define the limits of such a duty, unless it devolved upon the owner in a tenement-house occupied by a number of persons. If one or more who demised one story should be required to take care of the portion there and the others the remainder, it would be embarrassing to arrange for the whole so as to insure safety and protection to all the occupants. The law cited clearly was not intended thus to divide among several the performance of the obligation imposed. It was aimed at the owners. They were to erect and keep in repair, and the penalties provided could not well be inflicted upon a party not named in the act. Such being the purpose and design of the law, at least in the absence of any special agreement to the contrary, it must be assumed that the defendant was obligated to take care of and keep in repair the fire-escape where the accident occurred. Assuming that such obligation devolved upon the defendant the question arises whether he occupied such a relationship to the deceased as created a liability to respond in damages for the accident which caused his death. To maintain an action

McAlpin agt. Powell.

for personal injury occasioned by the negligence or want of care of another it must be made to appear that the defendant owed some duty or obligation to the party injured which he failed to discharge or perform. Unless there is some contract, duty or services which a party is bound to fulfill there can be no negligence, fault or breach of the obligation. The reported cases, where parties are charged for injuries to another occasioned by accident, have been decided upon the principle that there was negligence in doing, or omitting to do, some act by which a duty or obligation which the law imposed has been disregarded. The real point to be determined, then, is whether the defendant owed any duty to the deceased. If he was a trespasser when he entered upon the fire-escape he occupied the position of one who comes upon the premises of another without right, and who can maintain no action if he is injured by an obstruction or falls into an excavation which has been left open and uncovered. Even a license is not a protection unless some inducement or enticement is held out by the owner or occupant, and no recovery can be had for injuries sustained. The deceased was a bright, intelligent boy, nearly ten years of age, living with his father, who, with his family, occupied the upper story of the defendant's tenement-house, and used the room, the window of which opened on the fire-escape, for working at his trade as a shoemaker. The boy, immediately previous to the accident, sat on the window-sill which was fifteen or sixteen inches from the floor, the window being open, and about the same distance from the platform of the fire-escape. A workman engaged at his work was in the room at the time, but did not notice what took place. The deceased must have stepped on the platform of the fire-escape, which was about eight feet in length and three and one-half wide, and had an iron railing around the outside portion of it. and then have passed to the end where there was a trap door and a ladder leading to the platform in the next story below. The hinges of the trap-door, which were rusted and only fast-

ened with a small wire and a string, gave away and he was precipitated below and killed.

The deceased clearly had no right to go upon the platform, and was there for no legitimate purpose. It was not intended for any such use, and the act of the deceased in entering upon, and passing along, the platform was in violation of the purpose for which it was designed. It was put up only for a fire-escape to be used for the protection of life in case of danger from fires, and was not intended, and was never used, as a balcony. The proof showed that children were not accustomed to go there, and it was only accessible by passing out of the window. Nor does it appear from the evidence, although it was protected in part by an iron railing, that it was intended to be guarded in a manner sufficient to prevent accident to very young children arising from such an exposed position. It bore no indication that it was designed for general use, and furnished no invitation or attraction to young children any more than the roof of a stoop or piazza which projects under the window of a dwelling-house and is easy of access to persons in the vicinity. Under such a state of facts, and where a person thus voluntarily exposes himself to danger and is injured, there is no rule of law which authorizes a recovery. The books are full of cases bearing upon the subject, and although the decisions are not entirely harmonious there is no adjudication which holds that under circumstances like these an action will lie, while there are many in a contrary direction (*Lorgan* agt. *Champlain Canal Co.*, 56 *N. Y.*, 1; *Victory* agt. *Abbott, court of appeals*, 1876, *MS.*; *Abbott* agt. *Macfie*, 33 *L. J.*, 177; *Mangan* agt. *Atterton*, *L. R.*, 1 *Ex.*, 239).

In *Abbott* agt. *Macfie* (*supra*) the defendant placed the shutter of a window against the wall of a public street. The dress of a child who was playing in the street jumping off the shutter caught in the same and it fell and injured the child, and it was held that the defendant was not liable. The child was lawfully in the street in the case cited, and, hence, might

McAlpin agt. Powell

very naturally be attracted to the shutter which was there, while in the case at bar the deceased was obliged to go beyond the room in which he was to reach the fire-escape and overcome obstacles in the way of getting there. The decision cited establishes a stronger case against the defendant than the case at bar. In *Mangan* agt. *Atterton* (*supra*) the defendant exposed a machine which was dangerous when in motion. A boy four years old, by the direction of his brother, seven years of age, placed his fingers within the machine, which were crushed, and it was held that the defendant was not liable. Although the rule in regard to liability for the negligence of children is not as stringent in England as in this state, yet, within the principle decided in the last two cases, it is difficult to see how a liability can be incurred where the defendant has done nothing to produce the injury, and where there is an unauthorized interference with, or invasion of, his rights. It is true that some of the decisions are seemingly in conflict with those referred to, and cases may be found where a different doctrine appears to be upheld, as in *Lynch* agt. *Nordin* (1 *Ad. & El.* [*N. S.*], 29), where an infant entered into a cart standing in the street, and was injured, the owner was held liable. But there is a clear distinction between such a case, where the infant was lawfully in the highway which it has the right to travel and use, and where the blamable carelessness of the defendant tempted the child to amuse himself with an empty cart and a deserted horse, and a case where he is palpably invading the premises of another and is a mere trespasser. In the latter case a party is without the protection of the law, except in special cases.

The owner of land may dig an excavation on his own premises, not substantially adjoining a public highway, and no action lies against him by one who has strayed off the highway and fallen into the excavation (*Hardcastle* agt. *S. J. Railroad Co.*, 4 *Hurlst. & Nor.*, 67; *Hounsel* agt. *Smith*, 29 *L. J. C. P.*, 203; *Holt* agt. *Wilkes*, 3 *Barn. & Ald.*, 304; *Nicholson* agt. *Erie Railway Co.*, 41 *N. Y.*, 525). But a

McAlpin agt. Powell.

different rule prevails when the pit dug is so near the highway that a person, in using the same with ordinary caution, may fall in (*See Beck* agt. *Carter, court of appeals, February,* 1877, *where the authorities are reviewed*).

The reason of the rule in the latter case is, that a person lawfully using the highway in a reasonable manner is liable to fall in the pit, and where such is the case, a duty is imposed upon the owner to protect the excavation. The deceased was not on the platform by the defendant's invitation, nor did he come near there, as in the case of an excavation near the highway, while in the lawful use of his father's premises. He had stepped over the bounds and passed the limits to which he was restricted by the demise to his father, and, therefore, his case does not come within the rule which requires a party to protect a structure upon his own premises which is dangerous to others (*Gautrit* agt. *Egerton, L. R.*, 2 *C. P.*, 371 ; *Coe* agt. *Platt*, 5 *L. and Eq.*, 491 ; 11. *id.*, 551 ; *Lygo* agt. *Newbold*, 24 *id.*, 507 ; *Stern* agt. *Jackson*, 32 *id.*, 349 ; *Wilkinson* agt. *Farnie*, 1 *Hurlst. & Colt.*, 633).

The deceased had not even a license or permission, express or implied, to pass upon the fire-escape ; nor do we think that an inducement was held out which might have led him or others to believe that it was intended to be used by persons occupying the building ; or that it can be claimed that the defendant, directly or by implication, invited him to enter, and thus assumed the obligation that it was in a safe condition, or owed him any duty. The learned counsel for the plaintiff insists that the owner of machinery or other property, which by being trifled with by children results in injury to them, is liable if he negligently leave it open upon his own land or premises where children by interfering therewith may be injured, and we are referred to some cases which are supposed to maintain this doctrine. A leading case in which this rule is upheld is that of *The Railroad Company* agt. *Stout* (17 *Wall.*, 657). A child strayed on the company's grounds, and was injured by a turn-table being moved by other children, and it was held that while, as a general rule in

regard to an adult, that to entitle him to recover damages for an injury resulting from the fault or negligence of another, he must himself have been free from fault, such is not the rule to an infant of tender years.

That the care and caution required of a child is according to its maturity and capacity only, and this is to be determined in each case by the circumstances of that case; and that while the infant here was clearly a trespasser, and had no right on the premises of the railroad company, the defendant in the record disclaimed resting his case on the ground of plaintiff's negligence. The disclaimer ought to dispose of the question of plaintiff's negligence whether made in a direct form or indirectly under the allegation that the plaintiff was a trespasser upon the railroad premises, and cannot recover. The question, therefore, as to the negligence of the child was not in the case, and although the opinion discusses the authorities which bear upon that subject, an examination of them was not required for the decision of the same. This case is followed by *Keefe* agt. *Milwaukee* (21 *Minn.*, 209), which refers to the case last cited, and holds under a state of facts very similar, that the child was led into the commission of the trespass by the defendant himself, and thus occupied a position different from an ordinary trespasser, and under such circumstances the defendant owed it a duty which it did not owe to ordinary trespassers, and was liable. The decision is put upon the ground that the child was attracted by the turn-table and induced to go there by the conduct of the defendant.

We are not now called to express an opinion as to the soundness of these decisions in such a case; and while we are not prepared to uphold them, it is enough to say that the facts are by no means analogous. A child is permitted to go into the public streets, which are open to persons of all ages, without being chargeable with negligence, and being there, if led by attraction into danger, even although it may be that under some circumstances an action would lie for injuries occasioned thereby, such a case has no similarity to one where the child is left without any one to take especial charge of him and

McAlpin agt. Powell.

escapes through an open, unguarded window to a place of danger and sustains an injury without any allurements being held out to him. A wide distinction exists between the two cases, and while the one at bar is on the border line and the point of difference is, perhaps, very close, this distinction is fully recognized in the best considered adjudications in the courts, and is the turning point upon which cases of this character are to be determined. No case has ever held that the owner of a building rented to a tenant without a covenant that the landlord shall keep the same in repair, is responsible for damages occasioned by neglect to repair, and although, as we have seen, this case, as there was a statutory liability, may, perhaps, be excepted from the general rule, it would be going very far to hold that under circumstances like these the defendant was liable. There is another view of the case which was not presented on the argument, but which should not be overlooked. If there was any liability for negligence, this obligation was in part created by a failure to protect the infant children of the tenants from injury by restraining them from getting on the fire-escape. As to adults, it is to be supposed that their own judgment and discretion would answer that purpose. As to those of immature years, if the window had been temporarily protected, as is quite usual when young children are liable to be exposed to danger, the accident would not have occurred. A temporary gate or bars would have effected that object. The owner clearly was not called upon to provide this protection. Ordinarily, the tenant provides such protection for the safety of the members of his family who may require it. But without considering whether there was negligence of the tenant in this respect which exempted the defendant from liability, it is entirely apparent for the reasons already stated, that the action cannot be maintained. There was error in the trial in denying the motion for a nonsuit, and the judgment of the general term affirming the judgment must be reversed and a new trial granted, with costs to abide the event.

All concur except Church, Ch. J., dissenting.