OF THE

# STATE OF MISSOURI

AT THE

## OCTOBER TERM, 1888.

*(Continued from Volume 97.)*

---

CURLEY v. THE MISSOURI PACIFIC RAILWAY COMPANY,
*Appellant.*

| 98 | 13 |
|----|----|
| 126 | 387 |

Railroads : PERSONAL INJURY : CONTRIBUTORY NEGLIGENCE : PRACTICE.
A boy, ten years old, who, in company with other boys, entered
an empty box-car standing upon a railroad track, which was
being made up into a train by the train-men, and who was
after the train had started, pushed off by one of his companions in
the car and injured by the moving train, the train-men having no
knowledge of their presence in the car, cannot recover of the
company for the injury ; the evidence upon the trial showing these
facts, a demurrer to it should have been sustained.

*Appeal from St. Louis City Circuit Court.*—HON.
GEO. W. LUBKE, Judge.

REVERSED.

(13)

*Bennett Pike* for appellant.

The demurrer to the evidence should have been sustained. *Woods v. School District*, 44 Iowa, 27; *Railroad v. Henigh*, 23 Kan. 347; *Railroad v. Connell*, 88 Pa. St. 520; *Railroad v. McLaughlin*, 47 Ill. 265; *Lehey v. Railroad*, 3 Rob. (N. Y.) 204; *State v. Railroad*, 24 Md. 84; *Bannon v. Railroad*, 24 Mo. 108; *Railroad v. Sinclair*, 62 Ind. 301; *Railroad v. Hull*, 72 Ill. 222; *Railroad v. Ward*, 4 Col. 30; *Canley v. Railroad*, 2 A. & E. R. R. Cases, 4; *Hoag v. Railroad*, 85 Pa. St. 293; *Lewis v. Railroad*, 18 A. & E. R. R. Cases, 263; *Blake v. Newfield*, 68 Me. 365; *Poeppers v. Railroad*, 67 Mo. 725.

*G. M. Stewart* for respondent.

Whether or not the plaintiff (respondent) was guilty of contributory negligence, such as to exonerate the appellant from liability, was a question of fact for the jury to determine, after receiving from the court proper directions as to how they should apply these facts. *Frick v. Railroad*, 75 Mo. 595; *Scoville v. Railroad*, 81 Mo. 434; *Donohoe v. Railroad*, 83 Mo. 543; *Petty v. Railroad*, 88 Mo. 306; *Keim v. Railroad*, 90 Mo. 314. Contributory negligence is not set up as a defense in the case, and hence can only avail the defendant by way of deduction or inference from plaintiff's evidence. *Buesching v. Gas Light Co.*, 73 Mo. 219; *Stephens v. City of Macon*, 83 Mo. 345. The demurrer to the evidence was properly denied.

BRACE, J.—In this action, the plaintiff, who is a minor, sues by his next friend for damages for personal injuries sustained by him in being shoved out of one of defendant's freight cars while in motion on the levee

near Poplar street in the city of St. Louis.  In the court below he obtained a judgment for three thousand dollars, from which the defendant appeals.

On the trial, the defendant, at the close of plaintiff's evidence, demurred thereto.  Its demurrer being overruled, the defendant then offered evidence, and at the close of the whole evidence, asked the court to instruct the jury that on the evidence and the pleadings in the case the plaintiff could not recover.  The court refused this instruction, and submitted the case to the jury. The questions arising on the record can be determined on this ruling.

At the time of the injury, the defendant had tracks laid on the levee fronting the Mississippi river in the city of St. Louis.  On the afternoon of the day of the accident, its servants were engaged in making up a train of empty grain cars on these tracks, to be pulled out towards the Union Depot.  In doing this, they first threw in on one of these tracks seven of these cars, and left them standing, some of them with their doors open. They then pushed four more back into the elevator and afterwards ran around with them and coupled on to the seven standing cars, and the train of eleven cars thus made up started off on the trip in which the plaintiff was injured.  About twenty minutes intervened between the time when the seven cars were left standing on the track and the time when the other four were coupled to them.

The movements of the plaintiff, who at the time of his injury was about ten years of age, are thus given in his testimony in chief before the trial court: "On the morning of the accident, seven years ago, I went with some boys down to the river to see a boat race; I got a drink of ice water on the ferry boat there, then went up on the river bank where we stayed for five or ten minutes, then we saw some boys in a car and we got into the cars and took a seat; the train came bumping back and

we were frightened ; don't know how many boys there were on the cars ; Martin Stanley and Gus Proehl were the boys with me ; we were sitting down in the car when it started up ; as soon as the train started we got up and the boys were so frightened that they began shoving one another around in the car, and just as the car was about to turn, some one of the boys gave me a shove and my coat caught on a nail and I fell, and went right under the wheels ; the car cut off both of my legs ; didn't see any engine when I got on the car ; didn't hear any whistle or ringing of the bell when the engine coupled on to the cars ; didn't know that there was an engine attached to the cars until I felt the bumping ; I got on the car at Chouteau avenue and was thrown off at Poplar street, as the train was going west on Poplar, right where the train bends on Poplar street ; the engine was already on Poplar street ; I was pushed off of the car by some one of the boys ; don't know which one pushed me ; the boys were all pushing one another around the car when it started ; I was facing towards the river ; I had my back to them when some one gave a shove and I went head first, my coat could not hold me and turned me around ; the boys were pushing one another because they were anxious to get off the car ; didn't know any of the boys except the two I spoke of.''

Proehl and Stanley, the companions of the plaintiff, who testified on the trial, give substantially the same account of the accident, and both say they did not see the engine or hear the bell rung or whistle sounded.

Seven years intervened between the injury and the trial in the circuit court. In the interval the conductor and engineer died. The other two of defendant's servants who were engaged in the management of defendant's train testified. Swift, the switchman or helper, testified that he got on the rear car as soon as he coupled all the cars to the engine and gave the signal to go ahead ; that he didn't see anybody on or around the

cars, when he gave the signal to start. Couldn't say whether the bell was ringing or not as the engine was blowing off steam at the time. Blinn, the fireman, testified that the bell was ringing; that he was ringing it, didn't see anybody on the cars, looked to see, and didn't know there was anybody in the cars.

The *gravamen* of the charge in the petition is that defendant, knowing that plaintiff was in one of its empty cars in the train, or when by the exercise of ordinary care it might have known that he was in one of them, without warning, coupled its motive power to, and commenced moving its train, by reason whereof the plaintiff was injured. It is not pretended that there is any evidence in the case tending to prove that the defendant's servants actually knew that the plaintiff was in one of the cars, but the argument is that if they had been exercising that care and watchfulness demanded of them at the time and place by the nature of the business in which they were engaged they would have discovered him in the car. The disposition that the defendant's servants were making of the cars in the train would not lead them to suspect that they were to have him or any other person for a passenger on the train, and in fact he was not there for that or any other purpose legitimately connected with the operations of the train. The fact that some or all of the cars were left standing for a few minutes on the levee with their doors open whilst others were pushed into the elevator to be unloaded, was no act of negligence. No municipal regulation required them to be closed, and standing there they were not *per se* dangerous; they were in themselves perfectly harmless. And however attractive a man's property may be, he is not required to guard it to keep off trespassers, unless to trespass is to meet with immediate injury from the dangerous .character of the property, and from its attractiveness it may become a bait to the

unwary or for those of such tender years as not to be able to comprehend its dangerous character.

The fact that this open car on the levee was an attractive place for a boy of ten years who wanted to see an anticipated boat race on the river added nothing to the duty that defendant owed him. The servants of defendant were not his guardian to see that he did not go into places where he *might be* injured. They were engaged in operating dangerous machinery in a public street, in which they had a right to move, as had every other citizen. The danger to life, limb and property against which duty called upon them to continually guard, arises from the movements of defendant's cars upon its track. That duty required that they should be at their posts and on the watch, that the movement of the train might not hazard the lives or property of those who had the right to cross and doubtless were continually crossing and re-crossing its track. Duty to their employer and to the public gave them no time for observing a boat race, or speculating upon contingencies to be expected from it, or the circumstances attendant upon it, except as they may have thrust themselves upon their attention in their endeavor to prevent injury to persons whom it might assemble in a place of danger directly under their observation in the attentive discharge of their duties in the movement of their employer's train.

When they proposed to start, it was their duty to observe the train and the track, to give signals to all whose persons or property were likely to be endangered by the movement of the train on the track, of their intention, that those who were in, might get out, and that those who were out, might not go in the way of danger from the moving train. For a trespasser on the inside of one of the cars in the train, in a place of present safety, duty did not require them to have a thought or give a signal. Their duties to others

required all their thought and all their watchfulness. To him they owed no duty, other than that they owed to every human being, and that was, if they discovered him in a place of danger, to use all the means within their power to prevent injuring him ; and such discovery cannot be imputed to them unless it would have been impossible for them not to have made it, had they been at their posts and on the watch for persons at a place of danger from such movement where the presence of some person might reasonably have been expected. *Williams v. Railroad*, 96 Mo. 275 ; *Loeffler v. Railroad*, 96 Mo. 267; *Guenther v. Railroad*, 95 Mo. 286 ; *Scoville v. Railroad*, 81 Mo. 435 ; *Kelly v. Railroad*, 75 Mo. 138 ; *Frick v. Railroad*, 75 Mo. 595 ; *Isabel v. Railroad*, 60 Mo. 480.

The plaintiff was in no such place. He was not in a place where his presence ought to have been anticipated. He was not in a place exposed to danger from the movement of the train. He was not in a place where he would necessarily come under the observation of defendant's servants in the careful discharge of their duties in and about the train or even in a place where he would be likely to incur danger from its movement. That he should be pushed from a moving train by an agency independent of their action or the movements of the train was a sequence not to be expected, in the usual and ordinary course of things, from the presence of a trespassing boy, ten years of age, safely on the inside of a box-car.

We fail to discover in the facts of this case any negligence on the part of the defendant's servants contributing to, much less causing plaintiff's injury. It was the bitter fruit of his own wrong doing. The demurrer to the evidence ought to have been sustained. For the error of the court in refusing to sustain it, the judgment is reversed. All concur.