BARNEY, *by Next Friend, Appellant,* v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY.

Division Two, January 9, 1895.

1. **Railroads**: CARS: DANGEROUS MACHINES. Railroad cars and similar machinery are not "dangerous machines" within the meaning of the rule declaring turntables to be such.

2. ———: INJURY TO CHILD PLAYING IN YARD: RIDING ON TRAIN. It is not the duty of a railroad company to see that a child playing in its yard does not jump on its moving cars.

3. ———: FENCING YARDS. It is not the duty of a railroad company to fence its yards in cities or towns.

4. ———: TRESPASSERS IN YARDS. A railroad company owes no duty to trespassers in its yards, regardless of age, except that of not wantonly or recklessly injuring them after having discovered them to be in peril.

5. ———: DUTY: NEGLIGENCE. Negligence can not be affirmed of failure to do an act which the party sought to be charged is under no duty to perform.

6. ———: TRESPASSER: MISDEMEANOR: NEGLIGENCE. One injured while violating the statute (R. S. 1889, sec. 3927), making it a misdemeanor for "any person, minor or adult, to climb upon, hold to, or in any manner attach himself to, any locomotive engine or car, while the same is in motion, or running into or through any city or town," can not recover for such injury, and this is as true in the case of an infant of very tender years as in the case of an adult.

7. ———: ———: NEGLECT OF SELF-IMPOSED DUTY. It is not the duty of a railroad company to keep trespassers out of its yards, and the fact that it instructed its yard men to keep boys out of its yards, which the men neglected to do, will not render it liable for an injury to a boy of tender years injured while swinging on cars moving through the yards.

*Appeal from Buchanan Circuit Court.*—HON. H. M. RAMEY, Judge.

AFFIRMED.

Action for damages in the sum of $12,000, for injury to plaintiff's foot, it having been run over and crushed by the defendant company's cars in its railway yard in the city of St. Joseph, requiring amputation of the larger portion of the foot. The subjoined plat indicates the *locus in quo* and its surroundings. The accident occurred on the twenty-eighth of August, 1891, at which time plaintiff lacked of being six years of age, the difference in time between that date and the next December.

As will appear by inspection of the plat, the defendant owned a tract of ground between Sixth and Eighth streets, lying south of Olive street, in said city, which is used as its railway yard. This yard was half a mile long, and in it was situated its freight house, warehouse, team delivery tracks, the sidetracks used for the purpose of storing cars, and in making up trains, and in which all its switch work was done. This yard was separated from Eighth street by a strip of ground owned by the Rock Island road, upon which that company had two tracks. At the point where Mitchell avenue would cross the defendant's yard, had it been opened through the same, was a large warehouse, and just north of the warehouse there was a vacant, unoccupied plat of ground. The children in the neighborhood resorted to this vacant, unoccupied space and played marbles, hopscotch and other games there, and they would frequently get on the cars as the trains moved through the yards, or as the cars were being switched backward and forward in the making up of trains, a process that, it seems, was going on during

Barney v. The H. & St. J. R'y Co.

most of each day; some days they would quit their games to ride on the cars, and some days they would not. Sometimes, as the evidence shows, they rode on the tops of the cars; sometimes, and most usually, they contented themselves by seizing, with their hands, the stirrup, or lower round of the ladder on the side of the car, and then, placing their feet against the truck of the car, would ride in that way.

Plaintiff, whose parents lived in the vicinity of the yard at 812 Penn street, was an *habitue* of these yards; had been for some six months prior to the date mentioned, frequented the playground north of the warehouse, red barn, or red house as it was variously termed, and frequently had indulged in the perilous sport of riding on the cars as above indicated. Indeed, on the very morning of the mishap, plaintiff had jumped on the cars, and his father, seeing him there, went over and whipped him therefor, and spoke to some of the men there in regard to it. About this, plaintiff's father says: "I told two or three of them I wished they would whip the boy when they caught him in the yard, and the party made the remark: 'If we did, you would get mad about it', and I said 'I don't know whether I would or not.'"

Instructions were given to defendant's employees to keep the boys out of the yard, and such employees obeyed these instructions and drove the boys out, and for their pains in this regard, when the boys reached the street they would tell the employees to come no further, and would greet them with showers of stones. There was evidence, however, that defendant's employees did not obey their instructions at all times, but frequently, and without rebuke, would let the boys ride on the cars. But the uncontradicted testimony shows that it was simply impossible for the employees

to perform their work and keep the boys out of the yards.

East of the defendant's freight house, and between it and the Rock Island tracks, there were a dozen or more tracks running north and south, parallel to each other. Teams entered the yard from Olive street, near where Seventh street would enter the yard if it were open through the yards, and teams also came into the yards where the alley between Seventh and Eighth streets abutted against the yard on the north line, and a regular crossing had been made for teams over the Rock Island track on the east side of the yard near the old warehouse.

On the date mentioned, a regular freight train coming into St. Joseph from the east, consisting of twenty cars, pulled into this yard on one of these parallel tracks, and, passing west of the old warehouse, ran on north until the engine got within fifty feet of Olive street, where it stopped. The train was fully manned by its regular crew. In passing by the warehouse the train seemed to have attracted the attention of the boys who were playing north of the old warehouse, and plaintiff and two or three others ran over to the side of the train, and catching hold of the stirrup or lower round of the ladder on the side of the cars, and placing their feet against the trucks of the cars, rode some distance. Plaintiff says he hopped on four or five cars back from the engine; that he caught hold and rode a piece and then dropped off onto the ground, and again caught hold to ride as another car passed him. While holding on by his hands to the ladder with his feet on the journal that held the axle, his foot slipped off, went down onto the rails between the two wheels, and one wheel ran over the front portion of his foot, necessitating the amputation thereof.

The evidence shows that the tracks east and west of the track on which the train pulled in were covered with cars; injury occurred at a point opposite the middle of the freight house; that the engineer, fireman and brakeman of the train were at their places and on the lookout, and that they saw nothing of the boys. Indeed, the evidence shows that not one of the train crew knew of the accident to plaintiff for some hours after it occurred. As soon as the crew had taken the train up to the point near Olive street and opposite the freight house, the train was stopped, and the engine was cut off and taken to the roundhouse, and, the work of the crew being done, the crew went home.

The plaintiff's father was a conductor on the Grand Island railroad and knew the danger his son would incur in frequenting a railroad yard. Both he and his wife had punished the plaintiff a great many times before the day of the accident for being in the yard.

At the close of the case, certain instructions were given for plaintiff, certain ones given and others refused defendant, and then the jury brought in a verdict for plaintiff in the sum of $5,000. Whereupon the trial court, satisfied that it had, during the trial, committed "error of law," granted a new trial on being moved thereto by defendant. From this order awarding a new trial, plaintiff appealed to this court.

*James W. Boyd* for appellant.

(1) The motion for new trial should not have been sustained. No error of law was committed by the trial court. (2) The instruction given on the part of the appellant is correct. A proprietor can not place on his premises, exposed and unguarded, on or near public streets, adjoining residences and in the heart of a populous city, any dangerous instrument or agency,

calculated to attract children and neglect to take necessary steps to protect them from injury and escape liability for injury occurring by reason of such negligence. *Fink v. Furnace Co.*, 10 Mo. App. 61; *Brown v. Railroad*, 50 Mo. 461; *Crafton v. Railroad*, 55 Mo. 580; *Birge v. Gardiner*, 19 Conn. 507; *Hydraulic Co. v. Orr*, 83 Pa. St. 332; *Nagel v. Railroad*, 85 Mo. 653; *Schmidt v. Distilling Co.*, 90 Mo. 284; *Railroad v. Fitzsimmons*, 22 Kan. 686; Wharton on Neg., sec. 112; 1 Thompson on Neg., p. 304; *Rushenberg v. Railroad*, 109 Mo. 112; *Marcott v. Railroad*, 49 Mich. 99; *Railroad v. Measles*, 17 S. W. Rep. 124; *Barrett v. Railroad*, 27 Pac. Rep. 666; *O'Malley v. Railroad*, 43 Minn. 289. There could have been no contributory negligence. (3) If a reasonably prudent person, in the exercise of reasonable care, would have erected a fence or barrier on the sides of its yard on the side where the children came into it, or employed a watchman to keep them out, then it was respondent's duty to have done so. It was bound by common law principles to have done so, in the absence of any statute to that effect. *Marcott v. Railroad*, 40 Mich. 99; *Dean v. Sullivan*, 22 N. H. 316; *Railroad v. Chenewirth*, 52 Pa. St. 382; *Donegan v. Erhardt*, 119 N. Y. 486; Wharton on Neg., sec. 112. (4) Under the circumstances of this case, persons operating the train could not act upon the presumption that there was no danger without being responsible for the consequences. *Frick v. Railroad*, 75 Mo. 595; *Brown v. Railroad*, 50 Mo. 461; *Hicks v. Railroad*, 64 Mo. 430; *Williams v. Railroad*, 96 Mo. 275. (5) The verdict is in accordance with the instructions and the law and facts in the case and should not have been set aside. *Noble v. Blount*, 77 Mo. 235; *Boyce v. Smith*, 16 Mo. 317; *State ex rel. v. Adams*, 76 Mo. 605.

*Spencer & Mosman* for respondent.

(1) The court did not err in granting the defendant a new trial of this cause, for the reason that, under the evidence, the plaintiff was not entitled to recover. (2) The plaintiff was injured in the private grounds of the defendant, which constituted its railway yard. In order to maintain an action for a negligent injury "it must appear that there was a legal duty due from the person inflicting the injury to the person on whom it was inflicted and that such duty was violated by a want of ordinary care on the part of the defendant." *Kahl v. Love*, 37 N. J. L. 8 and 9, *Hallihan v. Railroad*, 71 Mo. 113; Cooley on Torts, 659 and 660. (3) The plaintiff and defendant did not occupy toward each other either, *first*, the relation of landlord and tenant, or, *second*, the relation of host and guest. It can not be claimed that Barney was in the defendant's yard in pursuance of any invitation. Campbell on Negligence, sec. 44; *Indermauer v. Dames*, L. R. 1 P. C. 274; *Clark v. Manchester*, 62 N. H. 577; *Galligan v. Metacomet Co.*, 10 N. E. Rep. 171; *Stevens v. Nichols*, 29 N. E. Rep. 1150; *Wright v. Railroad*, 7 N. E. Rep. 866; *Cusick v. Adams*, 21 N. E. Rep. 673; Cooley on Torts, p. 606. (4) *First.* There is no evidence tending to show that Barney was entitled to be at the place where he was injured by virtue of any license from the defendant. A license to enter land for one purpose will not be a defense in an action where the entry was for another and distinct purpose. *Norton v. Craig*, 68 Me. 275; 13 Am. and Eng. Encyclopedia of Law, pages 539 and 544; *State v. Shawley*, 52 Mo. App. 584. *Second.* Even as to a licensee, the rule is, that "no duty is imposed by law upon the owner or occupant to keep his premises in a suitable condition for those who come

there solely for their own convenience or pleasure and who are not either expressly invited to enter, or induced to come upon them, by the purposes for which the premises are appropriated, or by some adaptation of the place for use by customers or passengers which might naturally and reasonably lead them to suppose that they might properly and safely enter." *Straub v. Soderer*, 53 Mo. 43; *Moore v. Railroad*, 84 Mo. 485. The duty to licensees arises out of the maxim that a man must use his property so as not to incommode his neighbor. But "that maxim extends only to neighbors who do not interfere with the property of another or enter upon it." *Hughes v. Railroad*, 66 Mo. 327. *Third.* Again, Barney was not injured by any defect or insufficiency in the premises, but his injury was directly caused by his intermeddling with the passing cars, and in such a case, in order to render defendant liable, the evidence must show that the defendant's servants were aware of his dangerous position, and that they "had the time and the opportunity to have avoided the injury, and could have done so by the use of reasonable care in that behalf." *Rine v. Railroad*, 88 Mo. 400; *Nicholson v. Railroad*, 41 N. Y. 530. (5) *First.* Whatever Barney's rights to be on the open space north of the warehouse were, he had no right to be at a point 600 feet away, where he was injured. *Dahlstrom v. Railroad*, 96 Mo. 99; *Williams v. Railroad*, 96 Mo. 282; *Henry v. Railroad*, 76 Mo. 295; *Curley v. Railroad*, 98 Mo. 13; *Rushenberg v. Railroad*, 109 Mo. 112; *Ostertag v. Railroad*, 64 Mo. 422. *Second.* The defendant was not bound to have a watchman to guard its property to protect trespassers from intermeddling therewith and being injured. *Gavin v. Chicago*, 97 Ill. 66; *Emerson v. Peteler*, 35 Minn. 481; *Mathews v. Bensell*, 51 N. J. L. 30; *McEachern v. Railroad*, 150 Mass. 515. (6) Barney was guilty of a

misdemeanor under the ordinances of the city of St. Joseph, and the statutes of the state of Missouri, in attempting to catch hold of and climb upon a car in motion. R. S. 1889, sec. 3927. (7) *First*. Barney was on the defendant's ground under such circumstances as created no duty to him from the defendant, and the defendant's duty "in such a case is only not to want only or with reckless carelessness injure anyone." *Williams v. Railroad*, 96 Mo. 283; *Hepfel v. Railroad*, 51 N. W. Rep. 1049; *Barker v. Railroad*, 98 Mo. 53; *Railroad v. Munday*, 4 S. W. Rep. 782. *Second.* "The toleration of such depredation devolved no additional duties on defendant's agents in moving its trains." *Ostertag v. Railroad*, 64 Mo. 426; *Curley v. Railroad*, 98 Mo. 18. (8) Defendant owed no duty of active vigilance to protect Barney from accident. *Sutton v. Railroad,* 66 N. Y. 243; *McDermot v. Railroad*, 20 S. W. Rep. (Ky.) 380; *Frost v. Railroad*, 9 Atl. Rep. 790; *Clark v. Manchester*, 62 N. H. 577; *Railroad v. Schwindling*, 101 Penn. 258. (9) The courts have always held that, where boys are injured in consequence of catching on, and holding to, cars passing along a public street, no recovery can be had. *Hepfel v. Railroad*, 51 N. W. Rep. 1049; *Railroad v. Norton*, 47 Ill. 265; *Railroad v. Stump*, 69 Ill. 409; *Railroad v. Connell*, 88 Pa. St. 520; *Morrissey v. Railroad*, 126 Mass. 377; *Emerson v. Peteler*, 35 Minn. 481; *McAlpine v. Powell*, 70 N. Y. 126; *McEachern v. Railroad*, 150 Mass. 515; *Robinson v. Railroad*, 27 Pac. Rep. 689. The precise point involved in this case was determined in *Catlett v. Railroad*, 21 S. W. Rep. 1062, the court holding that no recovery could be had. (10) The act of Barney in intermeddling with the moving car was the direct and proximate cause of his injury. *Sherman v. Railroad*, 72 Mo. 62; *McEachern v. Railroad*, 150 Mass. 515; *Henry v. Railroad*, 76 Mo. 295;

*Barkley v. Railroad*, 96 Mo. 378. (11) *First.* The case at bar does not fall within the rule established in the turntable cases. A railway car is not a dangerous machine, and the application of the doctrine of the turntable cases to a car was expressly denied by this court in *Rushenberg's case*, 109 Mo. 117; *Curley's case*, 98 Mo. 17; *Henning v. Railroad*, 23 Kan. 347. *McEachern v. Railroad*, 150 Mass. 515; *Railroad v. McLaughlin*, 47 Ill. 265.; *Railroad v. Stump*, 69 Ill. 409; *Railroad v. Connell*, 88 Pa. St. 520; *Emerson v. Peteler*, 35 Minn. 481. *Second.* The doctrine of the turntable cases has been expressly repudiated by the courts of New York, New Hampshire and Massachusetts. *Frost v. Railroad*, 64 N. H. 220; *Daniel v. Railroad*, 28 N. E. Rep. 283. *Third.* Under the doctrine announced in the *Stout case*, it matters not how dangerous the implement, machine or article is, provided it is not left exposed, unlocked, unguarded and unattended, in such a situation that a child may set it in motion to his injury. This doctrine can have no application to the case at bar, where the defendant's cars were not left exposed, unattended and unguarded, but were manned by the regular crew and the members of the crew were alert and watchful in the discharge of their duties.

SHERWOOD, J.—Owing to the view taken of the facts of this case, it will be unnecessary to quote or comment on the instructions given or refused, save one, in the nature of a demurrer to the evidence, which, offered by defendant, the trial court refused to give. In determining the propriety of this refusal, several points of law will be found to be involved.

I. In the first place the rule applicable in what is known as the "turntable cases" has no application to cases of this sort. Railroad cars and similar machinery are not *"dangerous machines"* within the meaning of

that rule, as is abundantly and exhaustively shown, both directly and indirectly, in the following cases.  *Bishop v. Railroad*, 14 R. I. 314; *Catlett v. Railroad*, 21 S. W. Rep. 1062; *Railroad v. McLaughlin*, 47 Ill. 265; *Gavin v. City*, 97 Ill. 66.

The case last cited was one where the injury occurred to a little boy only four years old, on a swing-bridge, and it was ruled that when such a bridge in a city is reasonably safe for persons using ordinary care, and a child, without the fault of its parents, with other children playing upon and about such bridge, is injured while the bridge is being handled with the requisite and usual care and skill, no recovery can be had against the city, but the injury must be attributed to accident. The law does not make it the duty of municipal authorities to so construct such bridges as to make them safe for children to play upon and around them; hence they are not required to place guards or mechanical contrivances to keep children off the same.  SCOTT, J., remarking: "No doubt it would be possible to place a sufficient guard on duty at every bridge that would prevent accidents to careless persons, and to children that might come there to play, or some mechanical contrivance might possibly be constructed that would answer the same purpose; but the law has not made it the duty of municipal corporations to observe such extraordinary care.  The bridge, in the condition it was then in, was reasonably safe for all persons using the slightest care for their own safety.  No duty rests on the city to make such bridges safe for children to play around or upon, nor is it expected parents will allow their children to occupy such dangerous places as playgrounds, and if they wander from their homes without the knowledge of their parents, and sustain injury at such places, it must be attributed to mere accident that no care which they are obligated to ob-

serve, on the part of municipal authorities, could prevent."

In *McLaughlin's case, supra,* it was ruled that it was no part of the duty of a railroad company to maintain a guard over its cars left standing on its track, in order to keep children, playing about them, from getting upon or under them, and thereby save them from injury.

In *Morrissey v. Railroad,* 126 Mass. 377, a child four years of age was injured by a train, and the injury occurred on the railroad track at a point one hundred and thirty feet from the street, at a point where there was a path used by foot passengers, and the company had been told that this pathway opening was very dangerous for children, and the company had been requested to fence it. The evidence showed that the engineer did not see the plaintiff, neither before nor after the accident, but there was no evidence to show acts of willful carelessness on the part of the company. On the facts, AMES, J., observed: "The plaintiff at the time of the accident was a mere intruder and trespasser upon the railroad track. No inducement or implied invitation to him to enter upon it had been held out. He was neither a passenger nor on his way to become one, but was there merely for his own amusement, and was using the track as a playground. The defendant corporation owed him no duty, except the negative one not maliciously or with gross and reckless carelessness to run over him. *Johnson v. Boston & Maine Railroad,* 125 Mass. 75. Upon this question, and also upon the question whether the plaintiff's injuries had resulted from the tortious acts of the defendant, without contributory negligence on the part of the plaintiff or those who had him in charge, the case was submitted to the jury with instructions of which no complaint is made on his behalf.

The verdict was for the defendant, and we do not think that any other verdict could have been authorized by the evidence."

In *Bishop v. Railroad, supra,* the facts were these: While two horse cars attached together in charge of a driver on the front platform of the leading car and drawn by a single horse were driving over the tracks of the company in a public highway in the city of Providence from the stables to the repair shops, a lad six years old, to outstrip a playmate with whom he was racing, jumped on the rear platform of the leading car and soon afterwards fell off, or jumped off, and was seriously injured. The driver testified that he did not see the boys and knew nothing of the accident, which occurred between 2 and 3 o'clock P. M., until the evening. In an action against the horse car company to recover damages for the injury: *Held,* that the company was not chargeable with negligence. *Held,* further, that the driver of the car was not chargeable with any neglect of duty. *Held,* further, that the company was not bound to employ a second man to guard the cars from intrusion during their transit. *Held,* further, that the company was under no duty or obligation of care to the boy.

There, DURFEE, C. J., after discussing the cases of *Birge v. Gardiner,* 19 Conn. 507, *Railroad v. Stout,* 17 Wall. 657 and *Keffe v. Railroad,* 21 Minn. 207, said: "These cases seem to reach the limit of liability. * * * The case at bar differs very much from the three cases previously stated, for, in the case at bar, the cars, instead of being left unattended, were in charge of the driver, who was in the act of driving them, so that there was nothing done to encourage the trespass, which was merely the result of a momentary impulse. Ordinarily, a man who is using his property in a public place is

VOL. 126—25

not obliged to employ a special guard to protect it from the intrusion of children, merely because an intruding child may be injured by it. We have all seen a boy climb up behind a chaise or other vehicle for the purpose of stealing a ride, sometimes incurring a good deal of risk. It has never been supposed that it is the duty of the owner of such vehicle to keep an outrider on purpose to drive such boys away, and that, if he does not, he is liable to any boy who is injured while thus secretly stealing a ride. In such a case no duty of care is incurred." And after discussing a number of cases like those of 126 Mass., *supra*, and 88 Pa. St. *infra*, etc., etc., said: "These are all cases of injury to intrusive or trespassing children, in which the defendants were held to be exempt from liability, although they might have prevented the injury, because the kind of care which would have been required to prevent it was not obligatory upon them." See, also, *McAlpine v. Powell*, 55 How. Pr. 163; *Railroad v. Connell*, 88 Pa. St. 520; *Snyder v. Railroad*, 60 Mo. 413.

In *Emerson v. Peteler*, 35 Minn. 481, the distinction is drawn between *Keffe v. R'y Co.*, 21 Minn. 207, a turntable case, and the former case, where the injury occurred to a child five years old, who was killed while riding, unknown to the contractor or his employees, on cars loaded with earth used in making a fill. The boy who was killed, and his sister, considerably older, had been particularly warned not to ride on or go about the cars, and the employees of the contractor had been told not to allow children to ride on the cars. Commenting on these things, VANDERBURGH, J., said: "We discover no evidence in the case tending to prove negligence on the part of defendant in conducting this work. Defendant's management, and all the arrangements for moving these cars, were reasonably safe as respects danger to persons using ordinary care. This was the

measure of defendant's duty.  *  *  *  Where there
is no negligence, the incapacity of a child who happens
to be injured can not create liability. *Kay v. Penn. R.
Co.*, 65 Pa. St. 269, 276.  The burden rested on the
plaintiff to establish defendant's negligence, and it is
not claimed that there was any, unless the failure to
employ sufficient help to watch and keep children away
was such.  But the duty which defendant owed these
children was not to keep constant watch, or to use
ordinary care to prevent their approach, but, when dis-
covered in the exercise of ordinary care, to use proper
diligence to prevent any injury to them."

In *McEachern v. Railroad*, 150 Mass. 515, it was
ruled that a railroad corporation is not liable to a
boy who, without any invitation or enticement, tres-
passes upon its land and uses it for a playground and
is injured by meddling with a defective car standing
upon one of its tracks.

In *Railroad v. Henigh*, 23 Kan. 347, a flat car was
placed on a switch track where the grade was eighty
feet to the mile.  The brake was set.  A boy four years
and eight months old went to the car, climbed up
thereon, and managed to loose the brake, when the car
ran down the incline and the boy fell off, or jumped
off. and was run over and killed, and held, the company
was not liable, and that the car was not a dangerous
machine.  See, also, *Railroad v. Stumps*, 69 Ill. 409,
and *Curley v. Railroad*, 98 Mo. 17.

In *Rushenberg v. Railroad*, 109 Mo. 112, it was
expressly ruled that the "turntable" doctrine did not
apply to a train of cars.  Indeed, it may be said that
the doctrine of the "turntable cases" has been very
strongly criticised in the states of New York, New
Hampshire and Massachusetts.  *Daniel v. Railroad*, 28
N. E. Rep. 283; *Frost v. Railroad*, 64 N. H. 220.

But, even if that doctrine were applicable to rail-

road cars when at a *standstill*, it could not apply here, because here the cars were in motion, fully equipped with the requisite number of hands, while the theory of the *Stout case*, is that the negligence consists in leaving the dangerous machine, implement, etc., *exposed, unlocked and unguarded*.

II.   It is claimed that it was the duty of the defendant company to *fence its yards*.   While cases may be found requiring the performance of such a duty when it is imposed by special statutory provision, yet no case has been encountered where, in the absence of such statutory provision, it has been adjudicated that the duty of fencing exists; because the common law recognizes no such obligation.   And railroad corporations stand, in this regard, on the same footing as individuals. *Railroad v. Carraher*, 47 Ill. 333; *Hughes v. Railroad*, 66 Mo. 325; *Hayes v. Railroad*, 111 U. S. 228.

It is well settled in this state that railroad companies are not required to fence their tracks in cities and towns, notwithstanding the statute makes no exceptions as to the general requirement regarding such fencing.   And this ruling was made on the ground of necessity.   By parity of reasoning, it would seem that it would be impossible, consistent with the demands of commerce, to have railroad yards in a large city or town actually *"fenced in."*   Of course the object of such inclosure—to wit, the keeping out of trespassers from such yards, especially *children*—could not be accomplished without having *gates* at every opening (and not the ordinary bar) in order to make the fence effectual for the purpose for which it was designed.

It is only necessary to think for a moment of the utter impracticability of such a measure where hundreds of cars would be passing and repassing through the gates every hour, thus requiring their continuous opening and closing, in order to repudiate the visionary

idea advanced, altogether. But, if a railroad car or train is not to be regarded as a dangerous machine, as has been decided, then no necessity exists to place a barrier to prevent trespassers on the private yards of a railroad company from being injured. To such trespassers, no matter what their age, the railroad company, not having invited or encouraged their coming, owes no duty, except that of not wantonly or recklessly injuring them after having discovered them to be in peril. *Williams v. Railroad*, 96 Mo. 283; *Hepfel v. Railroad*, 51 N. W. Rep. 1049; *Cauley v. Railroad*, 95 Pa. St. 398.

Even as to a licensee, the rule is that "no duty is imposed by law upon the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon them by the purposes for which the premises are appropriated and occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter." *Straub v. Sodorer*, 53 Mo. 43.

In short, mere *passive acquiescence* of the occupier in a certain use of his land by others, generates no liability on his part. *Moore v. Railroad*, 84 Mo. 485.

And the same principle which, under the authorities cited, would deny the necessity for *guards* to keep trespassing children from boarding moving cars, would equally reject the necessity of barriers when demanded in place of such guards. There are cases where fences are needed, and where liability arises, where injury occurs in consequence of their not being built, but that is only where, as, for instance, the owner's premises extend up to the public highway and a dangerous excavation exists in close proximity to such thoroughfare.

But in such case such excavation would amount to a *common nuisance*, something which would hardly be affirmed of a railroad company when engaged in its legitimate labors and ordinary avocation, of assisting in moving with its numerous trains of cars the commerce of the country.

In *Overholt v. Vieths*, 93 Mo. 422, an abandoned quarry, but not bordering on the highway, became a pond in which the eight-year-old son of a party was drowned, and it was ruled that the owner of the quarry was under no obligation to build a fence around it to keep away trespassers, nor liable for injury to them occasioned by the absence of such a fence. In that case approving quotation is made from *Gillespie v. Mc-Gowan*, 100 Pa. St. 144, where a boy of less than eight years of age was drowned in a well, open and uncovered and unguarded, and on an unfenced lot, *a place of common resort for children*, and it was held that the boy was a trespasser; that the owner of the lot was under no duty to him to fence the lot or guard the well, and that, of consequence, no recovery could be had; PAXON, J., very pertinently remarking: "There are streams and pools of water where children may be drowned; there are inequalities of surface where they may be injured. To compel the owners of such property either to inclose it or fill up their ponds and level the surface so that trespassers may not be injured, would be an oppressive rule. The law does not require us to enforce any such principle, even where the trespassers are children. We all know that boys of eight years of age indulge in athletic sports. They fish, shoot, swim and climb trees. All of these amusements are attended with danger, and accidents frequently occur. It is part of a boy's nature to trespass, especially where there is tempting fruit, yet I never heard that it was the duty of the owner of a fruit tree to cut it down because a boy

trespasser may possibly fall from its branches. Yet the principle contended for by the plaintiff would bring us to this absurdity if carried to its logical conclusion. Moreover, it would charge the duty of the protection of children upon every member of the community except their parents."

Citation has been made by plaintiff to *Schmidt v. Distilling Co.*, 90 Mo. 284. There a child, three years old, fell into a pool of hot water and was scalded to death, the pool being formed by the escape of steam and water used in defendant's business, and was only some eighteen inches wide and some fifteen inches deep. This pool was at a distance from the public road and on the private grounds of defendant. And it was held in effect that if the little hole of hot water and mud was *"attractive to children,"* that it then should have been inclosed, and if not inclosed, being thus attractive, etc., defendant would not be *"properly exercising its dominion over its own property."* Contrasting the *Overholt* and the *Schmidt cases*, it would seem that the chief difference between them consisted in the *temperature of the water*, where the respective accidents occurred. Unless they can be reconciled and differentiated on this theory and on the further theory that a little muddy puddle of hot water that a child might step over is more attractive to a child than a deep pond of *cold* water, then they are utterly irreconcilable. This being so, we shall follow the ruling of the later case. As to *Fink's case*, 10 Mo. App. 61, it was expressly overruled on appeal to this court. 82 Mo. 276.

III. If it be true, as shown by the authorities, that plaintiff was a trespasser, to whom defendant owed no duty except that of not wantonly or recklessly injuring him, after discovering his peril, then, of course, no duty existed outside of that exception between the defendant corporation and the plaintiff, and if no duty,

then no negligence, because the latter must have the former as its inevitable and indispensable predicate. *Hallihan v. Railroad*, 71 Mo. 113.

IV. But plaintiff, in the particular act which resulted in the accident, was a *trespasser*, made so by the statute as well as by the ordinance of St. Joseph. Section 3927, Revised Statutes, 1889, makes it a misdemeanor for "any person, minor or adult, to climb upon, hold to or in any manner attach himself to any locomotive engine or car, while the same is in motion, or running into or through any city or town in this state." The ordinance is of similar import.

Plaintiff being a trespasser, a violator of law, could have no ground of recovery based on his own dereliction. But it is claimed for plaintiff that these regulations of the law do not apply to "*babies.*" While the law may not apply in a *criminal* proceeding to a child of very tender years, yet, still for the purposes of a *civil* action, the consequences of the unlawful act must be the same in the case of an *infant* even of very tender years, as in the case of an *adult*. In a word, the act of the infant in consequence of his tender years is, though *non-criminal*, yet is *wrongful* in the sense of being an invasion of the rights of another, just as much so as though done by an adult. And a landowner is under no duty to a mere trespasser to keep his premises safe; and the fact that the trespasser is an infant does not raise a duty where none otherwise exists. *Frost v. Railroad*, 64 N. H. 220, and cases cited.

V. But plaintiff's counsel says that defendant *assumed* the duty of keeping its yards clear of boys, by giving instructions to its yard hands, etc.; but that this duty was neglected and therefore a cause of action arises alone from this neglect. But if the prior duty *did not exist* to keep the boys out of the yards, then the *mere assumption* of a nonexistent duty, would be but a

*gratuity* with no precedent or concurrent consideration on which to base it, and therefore no liability would follow such assumed and pretermitted duty. Mere pretermission of a self-imposed precaution does not constitute actionable negligence. *Skelton v. Railroad*, L. R. 2 C. P. 636; Campbell on Negligence [2 Ed.], sec. 41.

In conclusion, we hold that the trial court committed error of law in denying defendant's instruction in the nature of a demurrer to the evidence, and therefore properly granted a new trial. For these reasons, judgment affirmed. All concur.