DWIGHT G. PARKER *vs.* PORTLAND PUBLISHING COMPANY.

Cumberland.   Opinion February 7, 1879.

*Negligence.   Evidence.   License.   Care.*

In an action on the case for negligence, the evidence must be confined to the time and place and circumstances of the injury, and the negligence then and there; but what occurred to others, at other times, more or less remote, is collateral and inadmissible.

Thus, where one is charged with negligence in not sufficiently lighting the hall and passage-way to his place of business, and in leaving open the doors to his elevator-way; *Held*, that evidence, embracing a period of two years, tending to show at different times the condition of the hall and entrance-way as to light,—whether more or less, or none—the position of the elevator gates and doors, of what had happened to others at different times, and their fortunate escape from peril, was not admissible.

Ordinary care and diligence must be used to keep business places, and the usual passage-way to them, safe for the access of all persons coming to them at all reasonable hours, by their invitation express or implied, or for any purpose beneficial to them.

No duty is owed to a mere licensee, and he has no cause of action for negligence in the place he is permitted to enter.

One entering the premises of another, whether by invitation, or as a mere licensee, is himself bound to exercise ordinary care and diligence, and failing in this and suffering injury, he cannot recover.

ON EXCEPTIONS AND MOTION.

ACTION on the case for negligence.

Plea, general issue.   Verdict for plaintiff for $4,000.

The facts, and so much of the bill of exceptions as are necessary to the understanding of the points decided, appear in the opinion.

*S. C. Andrews, A. A. Strout & G. F. Holmes,* for the plaintiff.

*T. B. Reed,* for the defendant.

APPLETON, C. J.   This is an action on the case for negligence.

The defendants had their counting room on Exchange street, on the lower floor.   The editorial and composing rooms were on the second floor.   At the head of the stairs is a hall, on the right hand is the door leading to defendants' rooms, and on the left is an elevator-way with folding doors.

The plaintiff, as he alleges, on the 17th of September, 1875, between eleven and twelve o'clock at night, was proceeding to the defendants' rooms on the second floor, the counting room being closed, for the purpose of procuring the insertion of a notice in the newspaper published by them, when, there being no sufficient light in the hall, and the doors to the elevator-way being left open, he fell down the elevator-way and was seriously injured.

The question for determination was whether there was negligence on the part of the defendants, at the time when and the place where the plaintiff sustained the injury for which he seeks compensation ; not whether there was negligence at other times and under different conditions. If the defendants are liable, they are not liable for past neglects, when an injury might have occurred but did not. Nor do previous omissions of duty prove, or tend to prove, the particular neglect of which the plaintiff complains.

I. Evidence, embracing a period of two years, tending to show at different times the condition of the hall-way and entrance to the Press editorial and composing rooms, as to light—whether more or less, or none—of the position of the elevator gate and doors, of what had happened to other men at other times, and of their fortunate escape from peril, was received, notwithstanding the seasonable and strenuous objections of the defendants.

These facts were all collateral to the main issue, and should have been excluded, " and the reason is, that such evidence tends to draw away the minds of the jury from the point in issue, and to excite prejudice and mislead them ; and, moreover, the adverse party, having no notice of such a course of evidence, is not prepared to rebut it." 1 Greenl. Ev., § 52.  " It may be added, that the evidence not being to a material point, the witness could not be indicted for perjury if it were false." 1 Greenl. Ev., § 448.

It was immaterial to the issue whether, on some particular day or night previous to the plaintiff's injury, the gates to the elevator had been closed or not; whether there had been sufficient light in the hall or not, or whether some individual had or had not been exposed to injury and had escaped. If evidence of this character is receivable, contradictory proofs would be admissible, and there would be as many collateral issues as there were collateral facts and witnesses testifying to them.

The entire weight of judicial authority is against the reception of the evidence received subject to objection. The attention of the jury would be diverted from the questions really in dispute, and directed to what is entirely collateral. *Hubbard* v. *A. & K. Railroad Co.*, 39 Maine 506. *Aldrich* v. *Pelham*, 1 Gray, 510. *Kidder* v. *Dunstable*, 11 Gray, 342. *Collins* v. *Dorchester*, 6 Cush. 396. *Gahagan* v. *B. & L. R. Co.*, 1 Allen, 187. *In re Baltimore & Susquehanna R. R. Co.* v. *Woodruff*, 4 Md. 242. *Schoonmaker* v. *Wilbraham*, 110 Mass. 134. " The evidence of what had happened at the same place the year before," observes Gray, C. J., in *Blair* v. *Pelham*, 118 Mass. 420, " was rightly rejected; because it tended to raise a collateral issue; because, it being admitted that the highway had been in the same condition for twenty-four hours before the injury now sued for, the previous length of time for which it had existed was immaterial."

The case of *Edwards* v. *Ottawa Riv. Nav. Co.*, 39 Up. Can. Q. B. 264, was an action against the defendant for negligence in the construction and management of their steamboat, by which sparks escaped from the funnel at the wharf, and the plaintiff's lumber and mills were burnt. The alleged negligence consisted in leaving the screens of the steamer open; and, on the part of the plaintiff, evidence was received, though objected to, that, on other occasions and at different times and places, the screens were open and cinders escaped. The presiding judge ruled that this evidence was admissible. *Held*, that such evidence was inadmissible to support the plaintiff's case, when it was tendered and received.

All the English and American cases bearing on the question were examined and discussed by Harrison, C. J., who, after stating the facts, says: " The declaration charges negligence by the defendants on a particular occasion and at a particular place, whereby, etc., and this the defendants deny. The only issue, therefore, for the determination of the jury was whether there was the negligence charged, on the occasion and at the place alleged, resulting in damage to some amount to the plaintiff. If, on the day and at the place in question, the screens were open and sparks escaped, one or more of which sparks set fire to the

pile of lumber, there was such negligence and such damage as alleged, and the jury should find for the plaintiff. It could not assist the jury in coming to a determination on that issue to show that, on other days and at other places, the screens were open and sparks escaped. Such evidence would, in my opinion, be more likely to mislead than to assist the jury in arriving at a proper determination." So in this case, what was done or omitted to be done, at other times, is immaterial.

As the case is one of grave importance, it may not be inexpedient to consider the various legal questions, which may arise in its different aspects in the trial of the case hereafter.

II. The defendants are only responsible for neglect of duty. They are bound to use ordinary and common care and diligence to keep the premises and the usual passage-way to them safe for the access of all persons coming to them at seasonable hours by their invitation, express or implied, or for any purpose beneficial to them, they exercising ordinary care in so coming. If the premises are in any respect dangerous, they are bound to give such visitors notice, to enable them with ordinary care to avoid the danger. *Knight* v. *P. & S. & P. Railroad Co.*, 56 Maine, 235. *Campbell* v. *Portland Sugar Co.*, 62 Maine, 552. *Elliot* v. *Pray*, 10 Allen, 378. *Sweeny* v. *Old Colony & Newport Railroad Co.*, 10 Allen, 369. *Chapman* v. *Rothwell*, 96 E. C. L. 168. *John* v. *Bacon*, 5 C. P. Law Rep. 437. Such are the general principles of law applicable to the case.

The counting room of the defendants was on the lower floor. This was the defendants' place of business. The editorial and composition rooms were in the second story. If there was an implied invitation, or permission merely, as a matter of accommodation, as the defendants' witnesses testified, the question would arise, if an invitation, whether such invitation could be implied after business hours and through the night, when the inhospitable absence of light would seem to negative such invitation.

III. But it is well settled, if the plaintiff was at the place where the injury was received by license merely, that the defendants would owe him no duty, and that he cannot recover. In *Holmes* v. *N. E. R. W. Co.*, 4 Ex. L. R. 257, Bramwell, B.,

said : " If the plaintiff had gone where he did by mere license of the defendants, he would have gone there subject to all the risks attending his going." In the same case, Channel, B., remarked : " I quite concur in the rule laid down by the cases, that where a person is a mere licensee, he has no cause of action on account of dangers existing in the place he is permitted to enter." In *Blackman* v. *Toronto Street Railway Co.*, 38 Up. Can. Q. B. 173, the deceased, a boy selling newspapers, got on a street railway car at the rear end and passed through the car to the front platform where the driver was standing ; he stepped to one side behind the driver and fell off, there being no step on that side, and was killed by the car running over him. The boy had paid no fare. It appeared that newsboys were allowed to enter the cars to sell newspapers without being charged. It was held that no right of action existed against the defendant ; that there was no breach of duty to him, and that he must take the cars as he found them. " Assuming," says Burton, J., " for the purposes of this case, that the defendant would be bound by any license or permission given to the deceased by the driver, he was, at best, in the position of a licensee, and, although whilst there the defendants would not be justified in injuring him by careless driving, any more than they would be by reckless driving over him if on the street, it is clear there was no duty on the part of the defendants, as regards the deceased, to have the steps of the cars in any other condition from that in which he found them when he availed himself of the permission to enter. He acquired no right, and whatever may have been the obligation of the defendants as regards their passengers, they owed no duty to the deceased to keep the car in repair." In the same case, Moss, J., remarks : " The passengers may have the right to insist that the car shall be free from patent defects, as the court of Queen's bench holds, but the licensee must take the vehicle as it is. He cannot claim that it should have been safer or stronger." " If," remarks Hagarty, C. J., " in the hall or office of a large hotel, newsboys or others were seen coming in and going out, offering newspapers, etc., for sale, I do not think there would be any implication in the event of an accident that such persons were guests in the hotel, or were there under

any contract, express or implied, with the host or owner that the premises should be in any particular order or condition."

The distinction between what is due to one on the premises by invitation, and a mere licensee, were fully considered and discussed in an elaborate opinion of Lord Chief Baron Lefroy, in the case of *Sullivan, ex'r*, v. *Waters*, 14 Irish Com. L. 466. The case came before the court on demurrer to a summons and plaint brought by the widow and administratrix of Patrick Sullivan, claiming damages from the defendants under Lord Campbell's act, on the ground that the death of Patrick Sullivan was occasioned by the negligence of the defendant. The negligence relied on is stated to consist in the permitting an aperture in the loft of the defendant to remain unguarded and neglected, by reason of which the deceased, passing along the floor of the loft, fell through the aperture and received injuries of which he died. The statements in the declaration, observes the Chief Baron, are, in substance, " that the defendant, at the time of the grievances in question, was in the possession of a distillery, and loft connected with it ; that Patrick Sullivan was employed by him as a laborer to do certain work about the distillery at night ; that Patrick Sullivan, as such laborer, had whilst so employed access by the license of the defendant to one of said lofts at night, and by such license used one of said lofts for the purpose of sleeping, during the intervals of the night when he was not actually engaged in said employment. The summons and plaint then proceeds (in the form of an assignment of a breach) to assert : Yet the defendant, well knowing the premises, wrongfully and negligently permitted a certain aperture, then being in the floor of said loft, to remain open, without being properly guarded and lighted, by reason whereof the said Patrick Sullivan, whilst passing along the floor of said loft in pursuance of said license, fell through the said aperture, and was thereby wounded and injured ; and, by reason of the wounds and injuries thereby occasioned to him as aforesaid, the said Patrick Sullivan, afterwards and within twelve months before this suit, died. The pleading states that the defendant had access to the loft, for the purpose of sleeping, by the license of the defendant ; which negatives that he used the

loft for that purpose under the contract of his employment. It is therefore quite plain that, if any obligation towards the deceased existed in the defendant to guard or light the aperture, such obligation must have arisen from the license to use the loft at night, and from the fact that the deceased used the loft in pursuance to such license." After an elaborate and exhaustive review of all the authorities, the Chief Baron concludes thus: "The deceased took the permission to sleep at the loft, instead of remaining up at night or sleeping elsewhere, during the intervals when he was not engaged in the business of the defendant. He must, I think, be considered as having taken the permission (to apply the language of Williams, J., in *Hansel* v. *Smith*, 7 C. B., N. S. 731, 'with its concomitant conditions, and, it may be, perils.' Under such circumstances he became his own insurer."

IV. Whatever may be the position of the plaintiff, whether there by express or implied invitation, or as a mere licensee, (his presence being simply permissible) he was bound to exercise common care and caution. He wished to find the Press office. He had never been there and did not know where it was. He was ignorant after he got to the head of the stairs as to the location of the door leading from the passage-way into the editorial rooms of the defendants. It was dark and he was a stranger to the premises. The alternative in such a case, as presented by Bramwell, B., in ordering a nonsuit was that, "if it was so dark that the plaintiff could not see, he ought not to have proceeded without a light; if it was sufficiently light for him to see, he might have avoided the staircase, which is a different thing from a hole or trap-door through which a person may fall." *Wilkinson* v. *Fairie*, 1 H. & C. 633. "In general," remarks Pollock, C. B., in that case, "it is the duty of every person to take care of his own safety, and not to walk along a dark passage without a light to disclose to him any danger." In *Forsyth* v. *Boston & Albany R. R. Co.*, 103 Mass. 513, it appeared that the plaintiff was a passenger in the defendants' cars at night, at a station of the defendants', on one of two platforms extending along each side of the track to a highway, (which, as the plaintiff knew, crossed the railroad) and having a step at the end next the highway ; that,

instead of walking along the platform, he voluntarily stepped from it, with the intention of going obliquely across the track to the highway, and when he stepped off fell into a cattle guard dug across the track and was injured; that the night was so dark that he felt with his foot to find the edge of the platform; and that he did nothing to ascertain what would be found on stepping from the platform. *Held*, that he was not in the exercise of due care, and could not recover, because he did not take any precaution to ascertain if he could make a step with safety. In *Pierce* v. *Whitcomb*, 48 Vt. 127, the facts were these: The plaintiff and the defendant were farmers. The plaintiff went to the defendant's late in the evening to buy some oats. The defendant kept his granary locked. He obtained the key and went with the plaintiff to the upper floor of the granary where the oats were, and, while the defendant went for a measure, the plaintiff walked about the floor in the dark, fell through an aperture therein, and was injured. *Held*, that the defendant was not liable for the injury. If the plaintiff's want of common care and prudence was the cause of his injury, he has only himself to blame, and cannot recover.

*Exceptions sustained.*

WALTON, DANFORTH, PETERS and LIBBEY, JJ., concurred.

VIRGIN, J., concurred in the result.