## ONDERDONK v. SMITH and others.

*(Circuit Court, S. D. New York. June 28, 1886.)*

1. NEGLIGENCE—OCCUPIER OF PIER—HOW CHARGED GENERALLY.
   A party who enjoys the exclusive privilege from the owner of a pier to use such pier in his business, though under no obligation to the owner in regard to repairs, assumes the duty to those invited there, to do business, not to expose them to peril by reason of defects in the condition of the premises known to him, or which, by reasonable diligence, would be known.

2. SAME—OBLIGATION TOWARDS INTRUDERS.
   One who occupies, and has the exclusive use of, a pier for loading his coal, is not responsible for damage to a barge caused by a defect in such pier, when the barge, having received its load some time before, had no business at the pier at the time the damage occurred, and was injured by a defect that did not exist during business hours.

In Admiralty.

*Charles W. Brooke, Geo. Bethune Adams*, and *Franklin A. Wilcox*, for respondents and appellants.

*J. A. Hyland*, for libelant and appellee.

WALLACE, J. The district court awarded damages to the libelant for the injuries to the scow barge and her cargo, occasioned by the sinking of the barge in consequence of being punctured by a spile which projected from the bottom of the slip, and directly under the place where the barge had taken her cargo. The defendants have appealed.

Although the appellants were not the owners or lessees of the pier, and were under no obligation, as between themselves and the owners, to make repairs, or remove any obstruction in the slip, inasmuch

as they enjoyed the exclusive privilege from the owners of using the pier and the adjoining slip for shipping their coal, and had to that extent the control and occupation of the premises, they assumed the duty towards those whom they invited there for the transaction of business not to expose them to hazard from any defects in the condition of the premises known to themselves, or which, by the use of reasonable diligence, should have been known. Their superintendent knew, and they were therefore chargeable with notice, of the existence of the spile, because, about three weeks before the occasion in question, another boat, the Getman, while lying at the same place, was struck by the same spile. On that occasion the Getman had taken on her cargo in the morning, the loading having been completed by 11 o'clock, but no tug came to take her away; and she remained there until half past 2 o'clock P. M., the tide in the mean time going down until it was somewhat more than half ebb, when she struck this spile. Her captain succeeded in getting her off without serious injury, but the attention of the appellants' superintendent was called to the occurrence.

If the scow had been injured by this obstruction while being loaded at the pier, or while going to it or away from it in the prosecution of the business which called her there, the case of the libelant would be clear. But the evidence is that her loading was completed at half past 4 o'clock in the afternoon, when the water was a little below high tide, and the accident happened about half past 9 in the evening, when the tide was low ebb; and if the scow had been removed from the place where she was loaded within a reasonable time after the loading was completed, she would not have been injured. When the tide went out, the scow settled down upon the spile, which projected about a foot from the bottom of the slip, and sufficiently far to puncture the boat at that condition of the water. The place was entirely safe, under ordinary circumstances, notwithstanding the existence of the spile. The captain of the Getman testifies that he had loaded his boat there 40 times without discovering the spile, and, although boats were being constantly loaded there, there is no evidence that any of these had ever encountered the spile except the Getman. It was only when the tide was at half ebb, or when, owing to some other cause, the water was low in the slip, that the place was not safe.

According to the usual course of business, the master of the scow should have hauled her away from the place where she was being loaded, when the cargo was fully delivered, to make way for other boats. Indeed, he had been expressly directed by the defendants' superintendent to move out of the berth when loaded, because another boat was expected to come in that afternoon. The master of the scow subsequently ascertained from the master of the other boat that the latter did not intend to begin loading that night, and assuming, doubtless, that there was no necessity for moving his boat away, as

the other boat was not to be hauled in, took the responsibility of permitting his boat to remain at the pier.    He testifies that .he asked permission of defendants' superintendent to allow his boat to remain there over night, and that the superintendent consented; but in this he is contradicted by the superintendent, and the latter's testimony is measurably corroborated by other testimony.

The only liability of the defendants grows out of their duty arising from their implied invitation to others to use the pier for the transaction of the business to which the pier was appropriated.    Their invitation was spent when the boat's business at the pier was finished, and a reasonable time had elapsed to enable her to move away.    After that she remained there at her own risk.    It is not necessary to hold that she was there against the permission of the defendants, and therefore a willful trespasser; but, assuming that she was there without having obtained the permission of the defendant's superintendent, the defendants were not under any obligation to concern themselves for her protection.    Under such circumstances, the law imposed no duty upon the defendants except the general duty which every man owes to others to do them no intentional wrong or injury.

The case is quite analogous to that of *Morgan* v. *Pennsylvania R. Co.*, 19 Blatchf. 239, S. C. 7 Fed. Rep. 78, (decided in this court.) There the plaintiff, while crossing the grounds of the defendant, fell into an unprotected pit, and was injured.    He had often crossed there before, and others had done so.    It was held that there was no invitation, and therefore that the defendant was not liable for the injury.

Owners of private property are not responsible for injuries caused by leaving a dangerous place unguarded, when the person injured was not on the premises by permission, or on business, or other lawful occasion, and had no right to be there.    One who thus uses another's premises cannot complain if he encounters unexpected perils. *Hounsell* v. *Smyth*, 7 C. B. (N. S.) 731; *Bolch* v. *Smith*, 7 Hurl. & N. 736; *Gautret* v. *Egerton*, L. R. 2 C. P. 371; *Nicholson* v. *Erie Ry. Co.*, 41 N. Y. 525; *Sutton* v. *New York Cent. R. Co.*, 66 N. Y. 243; *Johnson* v. *Boston & M. R. R.*, 125 Mass. 75; *Hargreaves* v. *Deacon*, 25 Mich. 1; *Pittsburgh, etc., Ry. Co.* v. *Bingham*, 29 Ohio St. 364; *Parker* v. *Portland Pub. Co.*, 69 Me. 173.

The libel is dismissed, with costs of the district court and of this court.