SHAW, Respondent, v. GOLDMAN et al., Appellants.

St. Louis Court of Appeals, January 2, 1906.

1. **NEGLIGENCE: Common Law Action: Elements of Actionable Negligence.** In an action at common law for damages on account of negligence there are three constituent elements necessary to make out a case; first, the existence of a duty on the part of the defendant to protect the plaintiff from the injury complained of; second, the failure to perform the duty; and third, the injury as result of the failure.

2. ———: **Unsafe Premises: Duty of Proprietor.** Where a person in control of premises for the transaction of business expressly or impliedly invites others there for the purpose of trade, he owes to such others the duty of ordinary care to keep such premises in a reasonably safe condition; and if such premises are not in a reasonably safe condition it is his duty to warn the customers of their unsafe condition if it is known to him and unknown to the customers.

3. ———: ———: **Private Apartments.** But the duty of a proprietor to exercise reasonable care to keep the premises in a safe condition applies only to the usual business place and does not apply to private apartments not intended for the transaction of business with the public.

4. ———: ———: ———: **License.** Where one enters the premises of another by permission only, without invitation or enticement, he is a licensee only, so that the proprietor owes him no duty to keep such premises safe, and where one comes upon the premises of another lawfully, or by invitation, to trade and enters other portions of the premises to which he is not invited, for the purpose of his own convenience, pleasure or curiosity, he is a licensee while occupying such portions of the premises and takes upon himself the risk of injury if those portions be unsafe.

5. ———: ———: ———: **Special Invitation.** Where a customer, upon the premises of another for the purpose of transacting business, is invited or induced by the proprietor to other portions of the premises not intended for customers, the proprietor is under the same duty to exercise reasonable care in furnishing a safe place, but is under no obligation in the absence of such special invitation or inducement.

6. ———: ———: ———: ———. A customer went into the store of a furniture dealer for the purpose of transacting bus-

iness and was told to go to the shipping clerk in a room in the rear, and, in attempting to go there, passed through a private room where he fell into an elevator shaft and was injured. It was shown that on two previous occasions he had been to the shipping clerk through another and safe passage. *Held*, in an action for injuries received, the customer was in the unsafe place without special invitation and could not recover.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood,* Judge.

REVERSED.

*Seneca N. & S. C. Taylor* for appellants.

The judgment should be reversed because the evidence undeniably shows there was no failure to exercise ordinary care on the part of defendant. Where there is no duty there can be no negligence. Where defendant owed a duty but did not owe it to the plaintiff, he cannot recover. 1 Shearman & Redfield on Neg. (5 Ed.), secs. 8, 9; 1 Kinkead's Commentaries on Torts, sec. 323; Turner v. Thomas, 71 Mo. 596; Henry v. Railroad, 76 Mo. 288; Barney v. Railway, 126 Mo. 372; Hicks v. Railway, 46 Mo. App. 304; Guffey v. Railway, 53 Mo. App. 462; Pierce v. Whitcomb, 48 Vt. 127; Schmidt v. Bauer, 22 Pac. 256 (Sup. Ct. Cal., 1899); Parker v. Pub. Co., 69 Maine 179; Victory v. Baker, 67 N. Y. 366; Murray v. McLean, 57 Ill. 378; Oil Co. v. Morton, 70 Tex. 404; Faris v. Hoberg, 134 Ind. 296; Frank v. Shopman, 41 Minn. 366; Armstrong v. Medbury, 67 Mich. 250; Madil v. Berkey, 76 Mich. 435; Zoebisch v. Tarbell, 10 Allen (Mass.), 385. The judgment should be reversed because the evidence conclusively shows without contradiction that the immediate cause of plaintiff's injuries were occasioned by his own negligence. The authorities already cited undeniably show that if a person entering a store on business departs from the usual ways of ingress and egress or strays into a dark

room and falls into an elevator shaft, he is guilty of negligence contributing to his injury, and he cannot recover. In every case where obviously plaintiff's own negligence directly contributed to his injury, he cannot recover. Milburn v. Railroad, 86 Mo. 109; Hudson v. Railroad, 101 Mo. 30; Beach on Contributory Neg., sec. 56; Turner v. Railroad, 74 Mo. 603; Kelly v. Railroad, 75 Mo. 138; Powell v. Railway, 76 Mo. 80; Molloy v. Railway, 84 Mo. 270; Taylor v. Railway, 86 Mo. 457; Hite v. Railway, 130 Mo. 132; Ottling v. Kahn, 134 Mo. 497; Gannon v. Gas Co., 145 Mo. 545; Haven v. Railroad, 155 Mo. 216.

*John J. O'Connor* for respondent.

The defendant's instruction demurring to plaintiff's evidence was, of course, properly overruled. Young v. Webb City, 150 Mo. 333; Bank v. Simpson, 152 Mo. 638; Keown v. Railroad, 141 Mo. 86; Gordon v. Burris, 141 Mo. 602. The occupier of a business house into which the public are invited by the occupant to trade with him for their mutual benefit is bound to keep the premises in a reasonably safe condition. O'Donnell v. Patton, 117 Mo. 13; Walsh v. McAllister, 15 Mo. App. 492; Carraway v. Long, 7 Mo. App. 595.

STATEMENT—Defendants are engaged in the business of buying and selling furniture at Nos. 1102-1104-1106 Olive street, in the city of St. Louis. The ground floor of the building is divided into three rooms, each of which is about twenty feet wide and one hundred feet deep. Communication between them is through an archway in the partition walls. No. 1102, or the east room, is divided east and west into two rooms by a board partition. The front room is about seventy feet deep and is used as a show room. The back room is a storage and packing room. This back room, through which an elevator shaft extends, is connected with the front

room by a small wicket door. Near this door is the elevator shaft, eight by six feet, which extends down to the bottom of the cellar, a distance of seven or eight feet. This shaft was unguarded on December 16, 1901, on which date plaintiff visited defendant's store on business. He alleges (substantially) in his petition that he was directed by one of defendants' salesmen to go from the front room of No. 1102 through the wicket door to reach another part of the building; that he was unaware of the existence of the elevator shaft and, on account of the darkness, did not discover it when he entered the room, and without fault or negligence on his part, he fell into the shaft and was injured.

The answer was a general denial and further, that plaintiff's injuries, if any, were caused by his own negligence in entering the room through the wicket door, and in failing to heed a warning given him not to enter, and in failing to use ordinary care to discover the shaft after he had entered the room.

The evidence shows that a few weeks previous to December 16, 1901, plaintiff bought an iron folding bed of M. J. Harris, one of defendants' salesmen. He directed that the bed should not be delivered until defendants were notified. He subsequently called at the store and directed the bed to be delivered, which was done, but on inspection, he discovered that it was faulty, and on December 16th returned to the store and saw Harris about the bed. On his first visit, plaintiff purchased the bed of Harris and was taken by him back to the shipping clerk to make a payment on the same. The office of the shipping clerk was located in a room cut off the south end of No. 1106. To reach this office, Harris and plaintiff went through the front part of No. 1106 and entered the shipping clerk's room through a door in the partition near the west wall of the building. On the occasion of his second visit, he, accompanied by Harris, went a second time to see the shipping clerk. This time, as well as before, they entered his office

through the same door in room No. 1106. On December 16th, plaintiff returned to the store and called Harris' attention to the defect in the bed. Harris told plaintiff to come into No. 1102 and look at a bed that was similar to the one he had bought. They both went into this room and plaintiff pointed out the defect in the bed that had been delivered to him. Plaintiff's testimony is that Harris then said to him: "Go back and see the shipping clerk," and pointed to the partition. Plaintiff testified that when Harris told him to go to see the shipping clerk, he (plaintiff) went in the direction of the door leading into the elevator shaft and passed Harris on his way, who was a couple of feet from him; that he went through that door and his intention was to go through that room and on into the office of the shipping clerk; that he had noticed, when in the shipping clerk's office on a former occasion, that a door opened from that room into this elevator room; that he saw no sign over the wicket door warning him to keep out; that having never been in the room, he did not know there was an elevator shaft in it; that it was dark in there and after stepping into the room, he stepped into the shaft and fell to the bottom and was injured. Harris testified that after showing the plaintiff the bed in No. 1102, he said, "We will have to see the shipping clerk to have this matter rectified," and said to plaintiff, "Follow me," or "Come with me and we will see the shipping clerk;" that he then passed through the archway into No. 1106, supposing plaintiff was following him. About the time he entered No. 1106, a customer called his attention from the plaintiff for a minute and when he turned to see if plaintiff was coming, he was out of sight and he did not see or hear any more of him until he had fallen into the shaft. Harris is corroborated by one of the Goldman brothers and by a lady customer, who swore she heard Harris tell plaintiff to follow him and also heard one of the Goldman brothers tell plaintiff to come on, that Harris was waiting for him.

The accident occurred in the daytime. The plaintiff testified that the day was dark and foggy and the elevator room was dark. On the part of defendant, the uncontradicted evidence shows that the elevator room was used as a storage and packing room and that customers were never taken or admitted into that room; that there was a sign in large, plain letters over the wicket door upon which these words were printed: "Positively no admittance. Keep out." Four or five of defendants' employees testified that at the time plaintiff fell into the elevator shaft there were four incandescent electric lights burning in the room and it was "as light as day." The door admitting ingress to the elevator room from the shipping clerk's office was a double iron or fire door.

At the conclusion of plaintiff's evidence, the court refused an instruction to find for the defendants and exception was saved. The verdict and judgment were for plaintiff. Defendants appealed.

NORTONI, J. (after stating the facts).—1. The statute (sec. 6435, R. S. 1899) is in no way involved in this case, but on the contrary the petition predicates on common law negligence. It is fundamental that in every case involving actionable negligence, there are of necessity three constituent elements to its existence.

First. The existence of a duty on the part of the person complained against to protect the complainant from the injury of which he complains.

Second. The failure of the defendant to perform that duty.

Third. Injury to the plaintiff resultant from such failure of the defendant.

Where these elements are brought together, they unitedly constitute actionable negligence. It is obvious that the absence of an affirmative showing of any one of these essential elements renders the complaint bad or

the evidence insufficient. [Faris v. Hoberg, 134 Ind. 269; Trask v. Shotwell, 41 Minn. 66; Barney v. Railway Co., 126 Mo. 372, 28 S. W. 1069; Yarnell v. Railway Co., 113 Mo. 570, 21 S. W. 1 Troth v. Norcross, 111 Mo. 630, 20 S. W. 297; Heizer v. Kingsland, etc., Co., 110 Mo. 605, 19 S. W. 630; Gurley v. Railway Co., 104 Mo. 211, 16 S. W. 11; Hallihan v. Railway Co., 71 Mo. 113; 21 Amer. and Eng. Ency. Law, (2 Ed.), 460-461-470.]

The law raises a duty or obligation in many instances against one person and in favor of another, and it is well settled in numerous adjudicated cases that where premises are in the occupancy and under the control of a party and used by him as a place for the transaction of business, and persons are either expressly or impliedly invited thereto to trade, the proprietor owes to those entering therein or thereupon in response to such invitation, the duty of ordinary care to keep said premises in a condition reasonably safe for the use of such parties so invited in the transaction of their business; and if the premises are not in such reasonably safe condition, it is the duty of the proprietor to warn the customer of such unsafe condition if he knows of it and it is unknown to the customer. [O'Donnell v. Patton, 117 Mo. 13-19, 22 S. W. 903; Kean v. Schoening, 103 Mo. App. 77, 77 S. W. 335; Welch v. McAllister, 15 Mo. App. 492; Carraway v. Long, 7 Mo. App. 595; Carleton v. Iron & Steel Works, 99 Mass. 216; Parker v. Portland Pub. Co., 69 Me. 173; Pierce v. Whitcomb, 48 Vt. 127; Sweeny v. Railway Co., 10 Allen (Mass.) 368; 1 Thompson Comm. on Neg., 985; Ray on Negligence of Implied Duties, 18-19; 21 Amer. & Eng. Ency. Law (2 Ed.), 471; Beach on Cont. Neg. (3 Ed.), sec. 51.]

2. The respondent being upon the premises as a customer in response to an invitation to him and the general public to enter therein for the purpose of trade, the petition counts upon this implied obligation of the appellant to maintain their premises in a reasonably

safe condition so that he might, by the exercise of ordinary care on his part, transact his business in safety and free from hurt and proceeds upon the theory, further, that in event there were pitfalls or places of danger therein which were known to appellants and unknown to the respondent, it was the duty of appellants as well to inform the respondent of such danger. There is no question but that this doctrine of the law is proper and sound. It is founded upon reason and justice as well, for it is palpable that a person inviting or alluring another into his place of business for the purpose of trade, ought in good morals to be required to furnish such person a reasonably safe and secure place to transact his business in safety by exercising due care upon his part, or be required to respond for whatever injury may befall the person thus relying upon such invitation and enters therein for the purposes mentioned. But this salutary rule of law extends no further than the reason for its existence. It predicates upon the invitation, express or implied, to transact business in the business place and usual and customary ways to and from and appurtenant thereto. [Schmidt v. Bauer, 22 Pac. (Calif.) 256; Zœbisch v. Tarbell, 10 Allen (Mass.) 285.] And to extend its application beyond the usual business place and such usual ways appurtenant, and into the private apartments, quarters or warerooms of the proprietor, which are not intended for the transaction of business with the public, there must be a showing of something more than the usual implied invitation of the shopkeeper to the general public to enter therein for the purposes mentioned, for the very sufficient reason that such places in and about business establishments are of necessity private in their nature and in which the customer has no place nor right save and except on express invitation. Had the injury of which complaint is made, befallen respondent while in the usual and customary place for the transaction of business and while he was exercising due care on his part, there could be no

controversy here over the right to recover reasonable compensation therefor in an action predicated as this one is, on the negligent failure of the appellants to perform their duty to furnish him a safe and secure place to trade.   He, having gone beyond the limits of the storeroom into which he came as a customer on the implied invitation, went beyond the limits of the invitation extended as well, and therefore there was no such obligation as above mentioned resting upon appellants in his favor unless he was ordered or invited by express act or conduct by some one in authority or possessed of sufficiently apparent authority thereabout and the burden is on the respondent to show such further express invitation or order.

3.   It is well settled on both reason and authority as well, that the owner of real property is entitled to the exclusive right to the same and a person, either natural or artificial, may exercise such dominion over and make such use of his possessions as to him seems proper and fit, provided he does not suffer nuisance thereon nor willfully or wantonly injure another in person or property, unless he owes some duty in some way to such other person, and as a necessary correlative of this fundamental proposition, it is abundantly established that one who enters upon the premises by permission only, without invitation, enticement or allurement held out to him by the occupier or owner or some representative thereof enters there at the very best, by mere permission, becoming a licensee only and enjoys the license at his own risk, or as it has been well said, he enjoys the license with its concomitant perils and takes upon himself whatever risk from pitfalls or other obstructions that may attend such merely permissive entry and in such case, no duty is imposed by law upon the owner or occupier to keep the premises in a suitable condition for those who go there solely for their own convenience or pleasure or to satisfy their curiosity.   [Barney v. Rail-

way Co., 126 Mo. 372-389, 28 S. W. 1069; Moore v. Railway Co., 84 Mo. 481; Pierce v. Whitcomb, 48 Vt. 127; Galveston Oil Co. v. Morton, 70 Tex. 401; Evansville, etc., Railway Co. v. Griffin, 100 Ind. 221; Faris v. Hoberg, 134 Ind. 272-276; Bedell v. Berkley, 76 Mich. 435; Armstrong v. Medbury, 67 Mich. 252; Flanigan v. Atl., etc., Co., 37 N. Y. App. Div. 476; Thompson on Neg. (1880), 330.] And therefore it has been frequently held that even though one comes upon the premises lawfully, as by invitation to trade or labor, and enters other portions thereof to which he was neither invited nor ordered, for the purpose of his own convenience, pleasure or curiosity, he thereby becomes a licensee while occupying such portions of the premises to which he was neither invited nor ordered, and takes upon himself the risk of so doing, and in such case, there is no duty incumbent upon the proprietor or the occupier of the premises to provide him a reasonably safe place, within the meaning of the rule hereinbefore indicated. [Flanigan v. Atl., etc., Co., 37 N. Y. (App. Div.) 476; Severy v. Nickerson, 120 Mass. 306; Pierce v. Whitcomb, 48 Vt. 127; Zoebusch v. Tarbell, 10 Allen (Mass.) 385; Schmidt v. Bauer, 22 Pac. (Cal.) 256; Parker v. Portland Pub. Co., 69 Me. 173; 21 Amer. & Eng. Ency. Law (2 Ed.), 427; 1 Thompson Comm. on Neg., 988.

In Pierce v. Whitcomb, supra, at page 131, the very able and learned Judge Redfield said: "But if one departs substantially from the provided way of access, or, becoming the guest or patron in a place of business, and of his own motion goes in the dark into places of danger, and is injured, he voluntarily takes the peril and risk upon himself."

4. It is only where the customer is invited or induced by the proprietor or other person in authority into such portions of the premises not intended for the customer, that the law raises the obligation on the part of the proprietor or occupier to furnish the customer a reasonably safe place therein for the purpose of the in-

vitation and this obligation or duty resting upon the proprietor springs from the same source as that before considered, i. e., it finds its origin in this invitation or inducement to enter, which carries with it a resultant guaranty on the part of the proprietor that the place is safe and secure for the purpose, and if, under such circumstances, the customer is injured because of this failure of the proprietor to discharge his duty in that behalf, then liability attaches for such injury; as in a case where a clerk of the proprietor invited a customer into a dark and unprovided part of the store and she there fell into an open cistern, it was held to be a proper question for the jury and the recovery was sustained. [Freer v. Cameron, 4 Rich. L. R. (S. C.) 228.] And in Welch v. McAllister, 15 Mo. App. 492, a husband and wife called upon a pork-packer from whom they usually purchased meats and desired to buy a shoulder. The foreman in charge pointed out certain meats and then accompanied both into the rear of the establishment, walking immediately in front of the wife, who stepped into a pitfall and was injured. This court held and very properly we think under the circumstances, "that neither the husband or wife is to be regarded as having been a trespasser, a mere volunteer or a bare licensee in the portion of the building where the open hatchway was situated," and the recovery was sustained. [See also 1 Thompson on Neg., sec. 988-989.]

Our attention has not been called to any case by the learned counsel where it was held that in the absence of an affirmative showing of express invitation or order or conduct equivalent thereto, such as the proprietor or other person in authority leading the way or accompanying the injured party into such private apartments, a recovery has been had, or where it has been asserted by any court or text-writer that under such circumstances any duty was owing by the proprietor or occupant to the complainant, and after diligent research in a vain attempt to sustain this judgment, we have been unable to

discover a single precedent supporting the doctrine contended for by respondent. On the contrary, the authorities, with marked unanimity, concur to the effect that under such circumstances, the complainant is a licensee and exercises the license with its concomitant perils and at his own risk.

5. It is argued, however, that inasmuch as the respondent gave evidence as follows: "Mr. Harris said to me: 'Go back there and see the shipping clerk,' and pointed to the partition, and I started, walked right past him to where the partition was," etc., that this was an order or invitation to respondent to go into said dangerous place and that therefore it was a proper case for the jury to say whether or not he had either been ordered or invited therein. It is to be noted that Mr. Harris was only about two feet away from the respondent when he started and passed him, so Mr. Harris did not see him about to enter the door of the partition. Then, too, there were other persons in the room investigating and purchasing goods. Had respondent been a stranger to the store, however, the argument might have more force than can be attached to it when measured along with other admissions from him on the witness stand. He testified that he had been in the store on two separate occasions within the last thirty days previous to this occurrence; on each occasion his call was pertaining to this same transaction and each time his wants were attended to by the same Mr. Harris; that the store consisted of three rooms, partitioned each from the other, and connected with an archway near the center of said partitions; that he and Mr. Harris were then in the room farthest east, that is, No. 1102; that he knew the shipping clerk's office was in the rear of the room farthest west, that is, room No. 1106, and upon his first visit he had been accompanied to the shipping clerk's office by Mr. Harris, on which occasion he paid ten dollars on the bed; that he and Mr. Harris entered the shipping clerk's room from the door on the west side

thereof inside of the west room, No. 1106; that two weeks later on the occasion of his second visit, also in company with the same Mr. Harris, he had called a second time upon the shipping clerk in the rear of room No. 1106 and entered the same door from the same room; so we see that Mr. Harris had, on two occasions, conducted him safely thereto and thus pointed him to a safe and secure route and evidently the route used by the firm and its employees. Respondent had no right to presume that there was another route thereto, inasmuch as he had twice been directed and accompanied along the route mentioned. He knew the location of and a proper and safe route to the shipping clerk's office. On the occasion in question, as said, he was in the second room east of No. 1106, and when Mr. Harris said: "Go back there and see the shipping clerk," pointing toward the partition, which was located in the general direction of the clerk's office, he of course was speaking with reference to respondent's then acquired knowledge of the situation of the office and the way to reach it, which knowledge both parties knew the respondent possessed, and in no sense could this expression be tortured, turned or twisted in the light of these circumstances, either into an order or an invitation to the respondent to go into the dark and dangerous room not intended for others than employees who were familiar therewith, for certainly the law will require the respondent in this case, as in every other, to use and be governed by some degree of intelligence (when he is a person possessing such, as respondent is), and will ascertain and measure the rights of the parties with regard thereto. If the respondent chose to explore for a shorter route to the office of the shipping clerk, the location of and route to which he had been fully acquainted with by appellants, he became a mere licensee in that portion of the building where he was unfortunately precipitated into the elevator shaft, and entered there at his own risk.

For the reason that the respondent was a mere li-

censee at the time and place of his injury and that there was therefore no duty resting upon the appellants to furnish him a reasonably safe and secure place and no consequent negligence in default thereof the judgment will be reversed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.