LETILLIA DAVISON, Appellant, v. ROYAL AMUSEMENT COMPANY, Respondent.

Springfield Court of Appeals, June 6, 1910.

1. **NEGLIGENCE: Licensees: Owner of Building: Sufficiency of Evidence.** Plaintiff was injured by falling down a stairway, and claimed to have tripped on a raised or bent metal cleat on a step. The evidence failed to show who was the owner of the building, or any duty on the part of defendant to keep the stairway repaired, or that defendant was in possession or claimed to own or control the building. *Held*, that the trial court was correct in sustaining a demurrer to plaintiff's evidence.

2. ————: **Essential Elements.** It is elementary law that in order to constitute actionable negligence three elements are essential: (1) The existence of a duty on the part of the defendant

Davison v. Royal Amusement Co.

to protect the plaintiff from injury; (2) A failure of the defendant to perform that duty; (3) The injury to the plaintiff from such failure of the defendant. It is only when these three elements are brought together that actionable negligence exists.

Appeal from St. Louis City Circuit Court.—*Hon. Matt G. Reynolds*, Judge.

AFFIRMED.

*A. R. Taylor* and *Howard Taylor* for appellant.

*Carter, Collins & Jones* for respondent.

NIXON, P. J.—This was an action by the appellant against the respondent arising out of a personal injury sustained by appellant while descending a stairway from the De Soto building, 708 Pine street, in the city of St. Louis. At the conclusion of plaintiff's case in chief, the court sustained a demurrer to plaintiff's evidence, and plaintiff has appealed, assigning this action of the court as error.

The petition charged that "defendant occupied, used and operated the building, premises, stairway and appliances as a place of business as a bowling parlor and alley to which the public was invited to do business with the defendant. . . . That on the 14th day of June, 1907, the plaintiff was in said building at the invitation of the defendant, and whilst on said stairway going down from the second to the first floor she caught her shoe and the toe thereof under a raised or bent metal cleat on the covering on said step and was thereby caused to be thrown and fall down said stairs, etc. And plaintiff avers that defendant was negligent *in maintaining said stairway* and metal cleat in a defective condition," etc.

The answer consisted of a general denial and a plea of contributory negligence in which it was charged

that the plaintiff at the time wore high heel shoes and descended the stairs in a hurried and rapid manner without exercising due care.

The reply to the answer was a general denial.

Plaintiff testified that she was stopping at the Planters Hotel in St. Louis and had been in St. Louis a number of times. She was asked at the outset: "Were you in the premises of this Royal Amusement Company on June 14, 1907? She answered: "Yes, sir; I was." She stated that a Miss Bernard was with her; that they went to the premises to see Dr. Cord who was a dentist and had been in that building for a number of years; plaintiff had not been in the building in question for a year and a half. She stated that when she went to the building on this occasion there was a sign on the outside of the building reading, "Ladies' Bowling Parlor." That when she first went into the building, she thought the building had been changed, but thought the dentist might be upstairs. She inquired of a man working at the elevator who said he was only fixing the elevator; that I might make inquiry upstairs. "Then I turned to Miss Bernard and said, 'Well, there is a ladies' bowling alley here.' Q. Well, what did you go up there for? A. To look at the bowling alley, see who was up there. Q. Did you and she go up to the bowling alley? A. Yes, sir." She stated that this bowling alley was on the second floor where only men were bowling; that she did not engage in bowling, but watched for about fifteen minutes; that there were three flights of stairs leading up to the bowling alley, one of nine steps, one of three steps and one of fourteen steps, and that the bowling alley is just in front of the top of the steps; that the bowling alley ran nearly the length of the building—"ran deep"—and she supposed it was about twenty feet wide. "Q. Now, after you were there in the bowling alley, as you stated, what did you and Miss Bernard do? A. Well, after looking, I inquired of the young man upstairs if he could tell me

where Dr. Cord had moved. Mr. Qualey, I believe the gentleman's name is, and he said that he did not know." Then she and her companion started down stairs and the injury occurred.

On cross-examination she testified: "I went up-stairs because I looked and I saw the bowling alley there; because I bowl and Miss Bernard bowls. Q. Well, now, if you wanted to bowl, why did you turn around on the second floor? A. Well, I had to pass the second floor to get to the third. Q. Why didn't you go to the third floor (to the ladies' bowling alley) if you went into the building to bowl? A. Well, we stopped there and looked on and it was getting late. Q. When you went inside of that building who were you looking for? A. I went into the front door to look for Dr. Cord, the dentist. Q. And you didn't abandon your search for Dr. Cord until you were told his offices were not in that building, is not that a fact? A. Yes, sir. Q. And then you turned around and walked down the steps? A. No, I noticed the building had been changed and just said, 'Well, we will go upstairs.' No, when I saw the building was changed, I was not searching for Dr. Cord, because I had other days to look for him. Q. You did ask the man who was repairing the elevator if Dr. Cord's office was in that building? A. I asked him if he could tell me where Dr. Cord was, and he said he didn't know. Q. So you did go into that building to bowl, is not that a fact? A. Not specially to bowl, but after we got upstairs we went in to look at the bowling alley. Q. And didn't the man repairing the elevator tell you to inquire upstairs for Dr. Cord? A. No, he said he didn't know. Q. Did he or did he not tell you that you would find out upstairs? A. No, not specially. I asked if he knew where Dr. Cord was and he said that he did not, and he spoke bad English—German —he motioned upstairs. Q. Now that building is occupied by others than the DeSoto Bowling Alley, is it not? A. On the ground floor I believe it is. Q. Well,

do you know? A. Yes, I have seen the names out there. Q. And the entrance to those other places is through the same door as the entrance to the bowling alley, is it not? A. Yes, sir. Q. And you previously had been in that building to see Dr. Cord? A. I had, yes, sir."

Dr. Wolfort stated that he had formerly had an office in the building in question, and he was asked: "Now, were you familiar with this stairway of the defendant leading from the first floor to the bowling alley? A. Yes, sir; I had been up and down it several times."

Lydia Dauer worked in a cigar store on the first floor of this building. "Q. Now, did you know the stairway leading up to the bowling alley from the first floor? A. Yes, sir." She stated that she had noticed the loose strip on the stairs the day before the injury; that the tack was out and ought to have been fastened down; that the cleat was about an inch above the floor. She said that she usually took the elevator but that it was out of order at the time of the injury. That the stairs were alongside the elevator shaft and against the east wall of the building.

Miss Bernard was asked: "Did you know the premises of the defendant occupied by them for a bowling alley before the 14th of June? A. No, sir." She stated that they went upstairs to the bowling alley at plaintiff's suggestion and witness watched the bowling for about fifteen minutes. That plaintiff said nothing to her about going to this building to see a dentist. Witness stated later, however, that plaintiff said she wanted to see "Dr......."

We have examined this evidence with the utmost care, searching every page for some evidence as to the ownership of this building, or for some evidence that would show a duty on the part of the Royal Amusement Company to maintain the stairway in a reasonably safe condition. The evidence shows that there was a cigar store on the first floor, and at least two doctors had previously maintained offices in the building. We cannot

tell how many stories high the building was; no word is spoken of the number of floors, stairways or entrances to the building, but there was an elevator. We see that the bowling alley on the second floor ran about the length of the building and was about twenty feet wide, and there is some mention in the evidence of a ladies' bowling alley on the third floor. No one told how wide the building was and for aught we know there may have been many tenants in the building. Obviously, each one of them would not be bound to maintain the stairs in a safe condition. It is true that counsel for plaintiff in putting questions to the witnesses referred to the "premises of this Royal Amusement Company" and "the premises of the defendant" and "this stairway of the defendant," but this was simply an assumption and not proof of ownership. There is no *evidence* whatever that the *Royal Amusement Company* occupied the building, or was in possession or claimed to control or own it; no evidence to even indicate that the Royal Amusement Company operated the bowling alleys referred to. The alleys were described in the evidence as the "DeSoto Bowling Alleys."

As we said in the case of Booker v. Southwest Missouri R. Co. (decided this term) : "It is elementary law that in order to constitute actionable negligence, three elements are essential to its existence: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) a failure of the defendant to perform that duty; and (3) the injury to the plaintiff from such failure of the defendant." And as said in Shaw v. Goldman, 116 Mo. App. 332, 337, 92 S. W. 165, "Where these elements are brought together, they *unitedly* constitute actionable negligence. *It is obvious that the absence of an affirmative showing of any one of these essential elements renders* the complaint bad or *the evidence insufficient.*"

For the reasons stated, the judgment is affirmed. All concur.