WILLIAM WATSON, APPELLANT, v. THE ST. JOSEPH COAL MINING COMPANY, RESPONDENT.*

Kansas City Court of Appeals. April 2, 1928.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2556, p. 662, n. 91; Mines and Minerals, 40CJ, section 900, p. 1186, n. 44; section 906, p. 1188, n. 76; Negligence, 45CJ, section 228, p. 820, n. 15; section 240, p. 831, n. 93; Trial, 38Cyc, p. 1617, n. 34.

*Pross T. Cross* and *Gerald Cross* for appellant.

*R. H. Musser* and *Lavelock, Kirkpatrick, Clark & Garner* for respondent.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict in the sum of $4500 but the court sus-

tained defendant's motion for a new trial on the ground that it erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence. Plaintiff has appealed.

The facts show that plaintiff was injured on August 6, 1925, while upon the coal mining premises of the defendant, by having his arm severed by a rock falling upon the same. The evidence shows that one Clevenger, who was engaged by the defendant as a coal miner, was directed by one Schooler, the foreman at the mine who employed and discharged men for the defendant, upon the Monday before the Wednesday when plaintiff was injured, to invite plaintiff to come and see Schooler about plaintiff's obtaining work at the mine. In reference to the matter, Clevenger testified—

" . . . Well, Mr. Watson asked me if he could get a job, and I asked Mr. Schooler if he could give Mr. Watson a job cracking coal; and he said, 'I have a man spoke for to break coal; but if it takes two men, I will give Watson a job. You can tell Watson to come down and see about it.' . . . No, Mr. Schooler was walking toward the house and I walked up to him and asked him about the job. He says, 'I have a man spoke for the job.' And he says, 'If one man can't do it, and it takes two men, I will give him the job. Tell him to come out.' "

The evidence shows that at this time defendant had but one man, named Adams, breaking coal. After plaintiff was injured, defendant had two men at this work. Clevenger saw plaintiff the evening of the same day that he had the conversation with Schooler and delivered to him Schooler's message.

Plaintiff testified that Clevenger told him "that he saw Schooler and that Schooler said for him to come down . . . he told me to go up there and see Mr. Schooler, and that he would give me a job;" that in response to Schooler's message, he went down to the mine to see Schooler about one o'clock of the day he was injured. Plaintiff went to the weightmaster's tower, which was fifteen feet above the ground and a few feet from the mine shaft, and asked the weighmaster, Cravens, who had no authority to employ plaintiff, where he could find Schooler. The weighmaster replied "in the bottom," meaning down in the mine shaft. The weighmaster said to plaintiff, "Go down and see Schooler and he will put you to work." Plaintiff then went down to a railroad coal car in which Adams was breaking coal and mounted the end of the car, which stood near the shaft, and asked Adams where Schooler could be found and Adams replied that Schooler was "in the bottom" and that Schooler "would be up in a little bit." The mine shaft was about ten or twelve feet west of where plaintiff stood on the railroad car. Adams was from four to six feet from plaintiff. Plaintiff remained on the foot or end of the car from three to five minutes with his arm lying over the edge of the car when a rock from a car on an overhead track fell and struck his

arm, severing it from his body. He testified that at the time he was hurt he had not been at the mine over ten minutes.

It appears that the rock car was brought out of the mine after plaintiff had taken his position on the railroad car. However, plaintiff testified that he did not know anything about the presence of the rock car or even of the track upon the superstructure above him until after he was struck; that he had never before been to the mine; that he did not look up before he was hurt, did not see the car of rock and did not hear it. The track upon which the rock car stood was twenty or thirty feet above the ground and eight or nine feet above plaintiff's head as he stood on the railroad car. He testified that no one gave him any warning and that he had no notice of the danger present. Defendant would bring material out of the mine on a double deck cage upon which two cars were brought up together, the rock car being placed on the top deck and a coal car on the bottom. The weighmaster's tower was between the shaft and the railroad car but nearer the latter and about fifteen feet above the ground. The weighmaster would pull the car of coal from the cage, weigh it and dump it into a chute which discharged it into the railroad car. The coal car was run upon a track below the rock car track. The opening of the mine shaft was seven by fourteen feet. Plaintiff testified that a "box or two" of coal was dumped into the railroad car while he was standing there; that Schooler would have come out of the mine shaft about ten or twelve feet from where he was standing at the time he was injured. He did not talk to Schooler as he was hurt before Schooler came from the shaft.

The evidence shows that plaintiff lived half of a mile from the mine and passed it several times a week; that he had been engaged as a section hand for the Santa Fe Railroad, and that the section of the road upon which he worked included the switch track to defendant's mine but that he had never worked upon this switch. The railroad car, and the switch upon which it stood, belonged to the railroad company and the rock car on the overhead track belonged to the coal company. Defendant's evidence tends to show that there were signs posted in various places on the mine premises, by direction of the state mine inspector, but none on the railroad car, notifying persons that it was "dangerous to be around" and that there was a notice at the shaft stating that it was dangerous to be around the shaft. Defendant's testimony was that these signs "were for the protection of people who come there and who are employed" and applied to persons "loafing or loitering" about the premises.

The petition alleges that plaintiff while on defendant's premises "was ordered, and directed by the defendant to a certain place or spot and see and talk to one of its employees for the purpose of securing certain information . . . said spot being a certain coal (railroad) car then being loaded with coal;" that at the time plaintiff

was injured, he was upon defendant's premises at the invitation and request of defendant and while so on said premises defendant negligently ran and operated the rock car on the track above where plaintiff stood and failed to provide any floor, platform, roof or other protection, to prevent rock piled in the car from slipping or falling below; that defendant negligently overloaded the rock car in question and piled the rock so that they were too high, "to a point," and so that they extended and hung over the edges of the car; that as the result of this negligence on the part of defendant a rock fell and plaintiff was injured. The petition further charges that plaintiff was ignorant of the location and existence of the rock car on the overhead track or of the track itself and defendant negligently failed to warn him thereof. With the exception of the charge that plaintiff was ordered and directed to go to a certain spot or place on defendant's premises, there was ample evidence to support the charge of negligence contained in the petition. Defendant does not contend otherwise but insists, first, that plaintiff was a mere licensee and not an invitee and, second, that if he were an invitee, he was not at a place at the time he was injured where the invitation extended, and that the court should have sustained its demurrer to the evidence.

We think there is no question but that plaintiff was an invitee upon the premises of the defendant. [Glaser v. Rothschild, 221 Mo. 180; 29 Cyc. 456.] The only question about which there could be any reasonable controversy, is whether or not plaintiff at the time of his injury was at a place which could reasonably be said to be one within the invitation. It was the duty of defendant to use ordinary care to keep its premises to which it invited plaintiff in such condition as to prevent injury to him. If the premises were not in reasonably safe condition, it was the duty of defendant to warn plaintiff of such unsafe condition if it knew it and it was unknown to plaintiff. But this duty arises out of and is co-extensive, both as to time and place, with the invitation extended. The invitation cannot be enlarged to include parts of the premises to which it did not extend.

"When an invitee steps clearly beyond the bounds of his invitation he then becomes a mere licensee, at most, and must take as he finds it the part of the premises he then enters." [Menteer v. Fruit Co., 240 Mo. 177, 183. See, also, Shaw v. Goldman, 116 Mo. App. 332, 338, 339.]

"In getting at the essence of and giving reasonable scope to the rules of law applicable to the liability of the owner for injuries received by an invitee, it has been well held that his license does not give him the right to roam at will, without further invitation, to out-of-the-way places on the premises, wholly disconnected from and in no way pertaining to the business in hand." [Glaser v. Rothschild, supra, l. c. 187.]

"But this duty does not extend so far as to make such an occupant responsible for the unsafe condition of those parts of his premises not intended for the reception of visitors or customers, and where they are not expected or invited to go." [1 Thompson on The Law of Negligence, p. 907.]

The test is, was plaintiff in a place where one would naturally or ordinarily be likely to go under the circumstances. [Banderob v. Railway, 133 Wis. 249.] It is defendant's contention that it was the duty of plaintiff on learning that Schooler was in the mine shaft to go and stay at or near the entrance of the shaft until Schooler emerged from the shaft and not at or near a distant place or under an overhead track such as the one shown in the testimony. We do not think that we can say as a matter of law that plaintiff assumed a position so far away from the place where Schooler would have emerged from the mine that plaintiff's station was outside of the bounds of his invitation. We have examined the cases cited by defendant and do not find them in point. They involve cases where persons, having gone upon the premises of merchants for the purpose of transacting business with them, strayed to a place upon the merchant's premises where the transaction of business by the public was not intended, or deviated from walks, paths, passageways, stairways and places provided for the use of persons by owners of the premises, merchants, landlords or others, and were injured. It would appear that there was no employment office at defendant's mine or office of any kind, or any designated paths, passageways or places where employees or those seeking employment, or other persons invited upon the premises of the defendant, were supposed to travel or post themselves. It would appear, therefore, that if plaintiff, having learned that Schooler was in the mine, stationed himself at any point around the place where Schooler would be expected to emerge from the mine, or within a reasonable distance of that place, and at a point not patently dangerous, he would still be at a place within the sphere of his invitation.

Defendant had stationed its employee, Adams, under the overhead track upon which was the rock car and plaintiff was standing where he would have been put to work had he secured employment. The jury could say that this was some evidence to a stranger that a position under the overhead track was not dangerous even though it was apparent to such a person that it was in fact an overhead track where cars loaded with material for the mine would be running. While no point is made in reference to the matter, the fact that plaintiff stood upon the end of the railroad car had nothing to do with the injury, at least, it was merely an incident. If he had been injured as a direct result of having gone upon the railroad car, a different question might be presented. There is nothing suggesting any danger in plaintiff's mounting the railroad car. The danger in this case would

have been present even though he stood on the ground. There was more or less danger in standing too near the shaft. According to defendant's evidence a sign was posted there warning people of the danger. We think that a station under the superstructure within ten or twelve feet of the shaft was not, as a matter of law, wholly without the sphere of the invitation. It could be reasonably said that a person in plaintiff's situation could have been reasonably expected by defendant to go where he stood even if there was a superstructure and track above. We take it that no one employed about a mine, or of sufficient mining experience to be so employed, would, under ordinary circumstances, consider that he was in any particular danger of being injured by placing himself in a position where plaintiff was stationed at the time he was injured, provided the overhead machinery was properly operated and protected. In this case it was a question for the jury as to whether the lack of protection was reasonably discoverable by plaintiff.

It is insisted that plaintiff was guilty of contributory negligence as a matter of law but from what we have said there is no merit in this contention. It is claimed that the trial court should have sustained the motion for a new trial on the ground that plaintiff's instructions Nos. 1 and 2 were erroneous in that they contained the following language: That if the jury believed "that while thereon (defendant's premises) he (plaintiff) was directed to and did go to a certain spot or place on said premises for the purpose of securing information concerning his said employment," etc., they should find for plaintiff. These instructions were clearly erroneous. Even if Craven's statement to plaintiff that he should "go down and see Schooler and he will put you to work" can be construed, under all the circumstances, as a direction to plaintiff to go to or near the mine shaft and there wait for Schooler, there is no testimony that Cravens was such an employee as had any authority to direct plaintiff as to the place where he should station himself, so there is no evidence upon which plaintiff's instructions one and two could properly have been given. These instructions wholly ignore the question of whether plaintiff was at a place within the sphere of his invitation. Defendant's testimony tends to show that he stationed himself as much as thirty feet from where Schooler was expected to emerge from the mine, and there is evidence raising an inference, at least, that the danger of standing where plaintiff placed himself could have been discovered by the exercise of ordinary care. Whether plaintiff at the time he was injured was at a place included within his invitation, was a question for the jury. [Banderob v. Railway, supra; Gilbert v. Nagle, 118 Mass. 278; McKee v. Bidwell, 74 Pac. State 218.]

If plaintiff's cause of action pleaded in his petition is based in part upon the theory that plaintiff was ordered and directed to go to "a certain spot or place," the demurrer to the evidence should have

been sustained for, as before stated, there is no evidence of any such direction by defendant. No doubt the petition will be amended so as to avoid all embarrassing complications of this nature. The court properly sustained the motion for a new trial, regardless of the grounds for this action, and the judgment will be and is affirmed. [Manthey v. Contracting Co., 277 S. W. 927.] *Arnold, J.,* concurs; *Trimble, P. J.,* absent.